United States Court of Appeals,

Eleventh Circuit.

No. 95-4217.

Emilio J. CHATELOIN, Petitioner-Appellant,

v.

Harry K. SINGLETARY, Secretary, Department of Corrections, State of Florida, Respondent-Appellee.

July 26, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-2189 CIV-DTKH), Daniel T.K. Hurley, Judge.

Before HATCHETT and ANDERSON, Circuit Judges, and WOOD[*], Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this appeal, the court affirms the district court's ruling that trial and appellate counsel did not render ineffective assistance to the appellant.

FACTS AND PROCEDURAL HISTORY

On February 7, 1986, Emilio J. Chateloin and Angel Rodriguez agreed to kidnap Geraldo Del Pino and Esteban Lemus and hold them for ransom believing that they had cheated them in a drug transaction. Later that day, Chateloin and Rodriguez accompanied Lemus and Del Pino to an unknown destination. While riding in the back seat of Lemus's Cadillac, Chateloin shot Lemus and Del Pino in the back of the head. After the shooting, Rodriguez got into the driver's seat, and he and Chateloin began driving around the city in search of a place to drop off the bodies. After removing all

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

the jewelry from the victims, Chateloin and Rodriguez threw their bodies off the Julia Tuttle Causeway into the water. Later that evening, Lino Marante attempted to dispose of Lemus's car. Marante drove the car to a residential neighborhood, ignited a sock and placed it into the gas tank of the car. Residents in that neighborhood notified the police of the burning car. After extinguishing the fire, the police discovered large quantities of blood and brain matter in the vehicle. The police also found wet sand on the floor of the vehicle underneath the steering wheel. On February 8, 1986, the police found Del Pino and Lemus's bodies on the shore along side of the Julia Tuttle Causeway. Sometime later, the police arrested Marante, Rodriguez, and Chateloin.

On May 29, 1986, Marante pleaded guilty to arson, accessory after the fact, and conspiracy. On June 1, 1986, a state grand jury returned an indictment charging Chateloin and Rodriguez with first-degree murder in violation of Florida Statutes § 782.04, armed robbery in violation of Florida Statutes § 812.13, conspiracy to commit armed robbery and kidnapping in violation of Florida Statutes §§ 812.13, 787.01, 775.087, and 777.04, and possession of a firearm while engaged in a criminal offense in violation of Florida Statutes § 790.07. On October 22, 1986, the state court held a pretrial hearing. At the pretrial hearing, the state represented that it would not seek the death penalty against either Chateloin or Rodriguez, at which time Rodriguez's counsel stated: "We waive a twelve-person jury." Chateloin's trial counsel, Vance Carr, did not speak at the hearing. The next day, on October 22, 1986, Rodriguez entered into a negotiated plea with the state

agreeing to plead guilty in exchange for a ten-year sentence.

On November 12, 1995, the state tried Chateloin before a six-member jury. Rodriguez and Marante testified and identified Chateloin as the instigator of the kidnapping plot. Rodriguez also identified Chateloin as the shooter. On November 14, 1986, the case went to the jury. Shortly after jury deliberations commenced, the jury submitted the following note to the trial court: "Please explain if the defendant is guilty of [possession of a firearm while engaged in a criminal offense as charged in] the indictment if the state does not prove who held the gun." The trial judge responded: "The law is as clear as I can make it. You must apply the law to the facts and reach a decision." Two hours later, the jury found Chateloin guilty on all counts. On January 22, 1987, the trial court sentenced Chateloin to consecutive life sentences with fifty years minimum mandatory. Chateloin also received fifteen years concurrent on the robbery charges and five years concurrent on the conspiracy and possession of firearm charges.

On February 20, 1987, Chateloin filed a timely notice of appeal to the Third District Court of Appeal of Florida (Third District). Sometime later, the state appointed Chateloin appellate counsel. On August 27, 1987, Chateloin's appellate counsel filed a brief stating that he could discern no appealable issues. The Third District upheld Chateloin's conviction in a *per curiam* memorandum opinion. In November of 1989, Chateloin filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, claiming ineffective assistance of trial and appellate counsel and denial of equal protection in the trial

court.  The trial judge denied Chateloin's motion.  On February 4, 1991, Chateloin appealed the trial court's denial of 3.850 relief to the Third District.  The Third District affirmed the trial court without an opinion.

On September 21, 1992, Chateloin filed a petition for habeas corpus relief in the Southern District of Florida pursuant to 28 U.S.C. § 2254 asserting that he received ineffective assistance of trial and appellate counsel. [**]  On March 23, 1994, a magistrate judge held an evidentiary hearing on Chateloin's petition for writ of habeas corpus.  On December 28, 1994, the magistrate judge issued a report recommending to the district court that it deny Chateloin habeas corpus relief.  Chateloin timely filed objections to the magistrate judge's report and recommendation.  On January 24, 1995, the district court, adopting the magistrate judge's report and recommendation, denied Chateloin habeas corpus relief.

## CONTENTIONS

Chateloin contends that he received ineffective assistance of trial counsel because counsel waived his right to a twelve-person jury after the state had independently decided not to seek the death penalty.  Chateloin argues that trial counsel's waiver of the right to a twelve-person jury was objectively unreasonable because he gave up a fundamental right of great importance while receiving nothing in exchange for the waiver.  Chateloin also contends that

---

[**]Chateloin also asserted that the state denied him due process and equal protection because it tried him before a six-person jury.  The magistrate judge found that this assertion did not constitute a cognizable claim because the United States Constitution does not grant criminal defendants a right to a trial before a twelve-person jury.

he received ineffective assistance of appellate counsel because appellate counsel, on direct appeal, failed to argue that the record did not show his personal waiver and failed to argue that the record did not show any expressed waiver from his trial counsel.

The state contends that Chateloin's trial counsel made a strategic decision to waive the right to a twelve-person jury. The state also contends that appellate counsel's failure to raise the lack of personal waiver and the lack of trial counsel's express waiver of the twelve-person jury fell within the wide range of professionally competent assistance.

## DISCUSSION

We review the district court's denial of habeas corpus relief *de novo. Agan v. Singletary,* 12 F.3d 1012, 1017 (11th Cir.1994). The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's assistance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense such that it deprived the defendant of a fair trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11th Cir.1987) ("The standard for ineffective assistance is the same for trial and appellate counsel."). A strong presumption exists that the challenged action constitutes sound trial strategy. Courts therefore must review the reasonableness of counsel's assistance in

light of the facts of the particular case at the time of counsel's conduct.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. In this case, Chateloin contends that he received ineffective assistance of counsel at both the trial and appellate level. We first address Chateloin's ineffective assistance claim against his trial counsel.

A. Ineffective Assistance of Trial Counsel

Chateloin contends that he received ineffective assistance of trial counsel because his trial counsel waived the right to a twelve-person jury without receiving anything in return for the waiver. Florida law guarantees criminal defendants a twelve-person jury in all capital cases. Fla.Stat.Ann. § 913.10 (West 1985). Where the state waives its right to seek the death penalty in a capital case, the defendant may agree, with the consent of the state and the approval of the court, to a jury of six persons. *State v. Griffith,* 561 So.2d 528 (Fla.1990).

In this case, the district court assumed for the purpose of Chateloin's claim that, as a matter of law, a trial counsel's performance is objectively unreasonable under *Strickland* where counsel waives his client's right to a twelve-person jury and receives nothing in return. The district court found, however, that Chateloin's trial counsel waived the right to a twelve-person jury in exchange for the state's waiver of the death penalty. Chateloin argues that the district court's finding that Carr waived

the twelve-person jury in exchange for the waiver of the death penalty is clearly erroneous because Carr did not testify that he had to waive the twelve-person jury to secure a death penalty waiver. In fact, Chateloin notes that Carr testified that he had no specific recollection of bargaining for the death penalty waiver.

In further support of his argument that Carr waived his right to a twelve-person jury after the state had already told Carr that it intended to waive the death penalty, Chateloin asserts that Carr did not discuss the death penalty with him at anytime prior to trial or inform him of his right to a twelve-person jury. The district court discredited Chateloin's testimony. Based on Carr's testimony regarding his habits and patterns in death penalty cases, the district court found that Carr would not have allowed Chateloin to proceed before a jury of only six persons had the state not waived the death penalty in return. Consequently, the district court held that Chateloin suffered no Sixth Amendment violation of his right to effective representation at trial.

We review the district court's factual findings for clear error giving due regard to the district court's opportunity to judge the credibility of witnesses. *Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988); *Smith v. Singletary,* 61 F.3d 815, 817 (11th Cir.1995). Because the determination of whether Carr waived Chateloin's right to a twelve-person jury in return for the state's waiver of the death penalty is a factual one, we must affirm the district court unless we are left with "the definite and firm conviction that a mistake

has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Like the district court, we assume for purposes of this discussion that trial counsel's waiver of the right to a twelve-person jury for "nothing" in return is objectively unreasonable.

In this case, both Carr and the state prosecutor lacked specific recollection of their conversations concerning the death penalty in this case. At the time of the waiver, the state, however, regularly entered into agreements with defense counsel to waive the death penalty in exchange for the defendant's waiver of his right to a twelve-person jury. The state prosecutor testified that the state may have entered into such an agreement in this case. No documentary evidence exists with respect to the existence or nonexistence of such an agreement. Carr testified, at the evidentiary hearing, that in defending any capital case, his single most important objective is to prevent the client from receiving a sentence of death. Carr also testified that it was his pattern in capital cases to "give and take a little bit" where necessary to get the state to drop the death penalty. Carr further testified that he believed it was reasonable to give up the right to a twelve-person jury in exchange for the state not seeking the death penalty against his client and that he considered such action a strategic move. In addition, Carr testified that he always explained and discussed with his client the possibility that the state would seek the death penalty for the capital offense.

The district court in crediting Carr's testimony noted that prior to representing Chateloin, Carr had handled numerous homicide

cases as an assistant state attorney and in private practice. The district court also noted that in 1987, Carr actively represented two people who received the death penalty. Based on the facts of this case and the evidence in the record, we cannot conclude that the district court's finding that counsel waived the right to a twelve-person jury in exchange for the waiver of the death penalty constitutes clear error. Therefore, we affirm the denial of habeas corpus on Chateloin's ineffective assistance of trial counsel claim.

## B. Ineffective Assistance of Appellate Counsel

We now address Chateloin's ineffective assistance of appellate counsel claims. Chateloin contends that his appellate counsel rendered ineffective assistance for failing to raise on appeal the fact that the record did not show his personal waiver of the twelve-person jury. Chateloin also contends that his appellate counsel rendered ineffective assistance of counsel because he failed to raise on appeal that the record did not show any express waiver—either by him or his counsel. The district court found that in 1986 and 1987, the time of Chateloin's direct appeal, Florida law did not clearly require either personal waiver of a twelve-person jury on the record or a written waiver of the right to a twelve-person jury. Since the time of Chateloin's direct appeal, the Florida Supreme Court in *State v. Griffith* has held that an effective waiver of the right to a twelve-person jury does not require an on-the-record showing of the defendant's personal knowledge and intelligent waiver. *Griffith,* 561 So.2d at 530. *Griffith,* however, is not relevant to this inquiry because, as

previously discussed, we review the reasonableness of counsel's assistance in light of the facts and law that existed at the time of the challenged conduct.

Chateloin argues that had the appellate counsel raised the lack of personal waiver and express waiver on appeal state law would have entitled him to an automatic reversal on direct review. In support of his argument that Florida law at the time of his direct appeal required a written waiver of the right to a twelve-person jury, he cites *Jones v. State,* 452 So.2d 643 (Fla. 4th D.C.A.1984). In *Jones,* the defendant exercised his right to a twelve-person jury, and the court empaneled a jury of twelve persons. Prior to the trial, however, the state and defense counsel decided not to choose an alternate juror and agreed in the event a juror became unable to serve, the trial would continue with the eleven remaining jurors. During the trial, one of the twelve jurors injured herself and requested the court to excuse her from jury duty. The defendant's counsel agreed to the dismissal of this juror. The court continued the trial with the remaining eleven jurors as previously stipulated. The *Jones* court reversed and remanded for a new trial, finding that the joint stipulation prior to the commencement of the trial did not constitute an effective waiver of the defendant's right to a twelve-person jury. Specifically, the court held that where a trial is held before an eleven-person jury, the defendant must sign a written waiver of his right to a twelve-person jury.

Chateloin argues, notwithstanding the factual differences of *Jones* and this case, that the holding in *Jones* entitles him to a

new trial because this record lacks a written waiver of his right to a twelve-person jury. Chateloin also argues that appellate counsel rendered ineffective assistance through failing to raise the lack of personal waiver in the record. He cites *Nova v. State* for the proposition that a defendant must voluntarily and intelligently waive his right to a twelve-person jury in order to constitute a valid waiver. *Nova v. State,* 439 So.2d 255, 262 (Fla.3d D.C.A.1983). We reject Chateloin's contention that the law at the time of his direct appeal clearly established that waivers of the right to a twelve-person jury in a capital case required that the defendant personally waive his right to a twelve-person jury in writing or on the record in open court. We note that during the same period of time of the *Jones* and *Nova* decisions, the state court decided *Groomes v. State,* 401 So.2d 1139 (Fla.3d D.C.A.1981). In *Groomes,* the court declined to address the defendant's assertion that the waiver of his right to a twelve-person jury was not knowingly and intelligently made, finding that the defendant did not properly preserve this issue for review because he failed to object to the stipulation during the trial. *Groomes,* 401 So.2d at 1140. Like *Groomes,* Chateloin did not object to the waiver of his right to a twelve-person jury. Accordingly, it was reasonable for Chateloin's appellate counsel to believe that the court would not entertain the "knowing and intelligent waiver" claim.

Although the Third District decided *Groomes* prior to *Jones* and *Nova, Groomes* remained good law at the time of Chateloin's direct appeal to the state court. Moreover, *Nova* does not support

Chateloin's contention that state law requires the defendant to personally waive his right to a twelve-person jury because the court in *Nova* did not require that the defendant personally waive his right to a twelve-person jury in open court. In fact, the holding in *Nova* was much more limited. The *Nova* court specifically held that where the defendant did not receive the agreed upon sentence in exchange for his waiver of the twelve-person jury, the waiver is involuntary and therefore must be set aside. *Nova,* 439 So.2d at 263. Because the case law at the time of Chateloin's direct appeal did not clearly require a defendant to either personally waive his right to a twelve-person jury in open court or sign a written waiver of such right, we conclude that Chateloin's appellate counsel's failure to raise the lack of personal waiver claim did not fall below an objective standard of reasonableness.

Similarly, we reject Chateloin's argument that Rodriguez's counsel did not effectively waive Chateloin's right to a twelve-person jury when he stated, speaking on behalf of himself and Carr, Chateloin's trial counsel, at the pretrial hearing, that "We waive a twelve-person jury." In rejecting this argument, we note that Carr was present during Rodriguez's counsel statement and did not object to counsel's representation to the court. Accordingly, we conclude that appellate counsel's performance did not prejudice the defense such that it deprived the defendant of a fair trial.

## CONCLUSION

For the foregoing reasons, we conclude that the district court properly denied Chateloin's petition for habeas corpus relief.

AFFIRMED.