[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11 2000
THOMAS K. KAHN
CLERK

No. 97-4592

D.C. Docket No. 95-01142-CV-JAL

DAVID CABBERIZA,

Petitioner- Appellant,

versus

MICHAEL W. MOORE,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(July 11, 2000)**

Before TJOFLAT, MARCUS and CUDAHY*, Circuit Judges.

_____
* Honorable Richard D. Cudahy, U.S. Circuit Judge for the Second Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

In Florida, most felonies are tried before a six-person jury. A person charged with the capital crime of first degree murder is entitled to a twelve-person jury, although he may waive that right and accept a jury of six. In this case, petitioner David Cabberiza ("petitioner") was indicted for first degree murder and thus was entitled to a twelve-person jury. Prior to trial, his attorney agreed (with the prosecutor) to a trial before a six-person jury. That jury convicted petitioner of first degree murder, robbery, and burglary. After exhausting his state court remedies, he petitioned the United States District Court for the Southern District of Florida for a writ of habeas corpus, claiming that his convictions were invalid because (1) the Sixth Amendment[1] required that he be tried of first degree murder by a jury of twelve, and that he did not knowingly and voluntarily waive that requirement; (2) if the Sixth Amendment did not require a jury of twelve, Florida law required one, and the trial court denied him due process of law when it accepted counsel's waiver of that requirement; (3) his attorney denied him his Sixth Amendment right to effective assistance of counsel in agreeing to a trial before a six-person jury; and (4) if trial

[1] The Sixth Amendment has been made applicable to the States through the Fourteenth Amendment. See Duncan v. Louisiana, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447, 20 L. Ed. 2d 491 (1968). We therefore do not refer to the Fourteenth Amendment with respect to petitioner's Sixth Amendment claims.

before a six-person jury was appropriate, the trial court denied him his Sixth Amendment right when, on a poll of the jury, it accepted a verdict of guilty executed by only five of the jurors.

The district court concluded that the record of petitioner's criminal prosecution foreclosed each of his claims as a matter of law and therefore denied them without an evidentiary hearing. We affirm.

I.

A.

On November 30, 1983, Severino Gomez returned to his home in Miami, Florida, to find his home ransacked and his wife Amada murdered. Within two months, Dade County police arrested petitioner and another man, Jose Enriquez, on suspicion of robbery, burglary, and murder.[2]

While in custody, petitioner gave the police a statement (and signed a transcript of that statement) admitting that he and Enriquez had committed the crime. Petitioner claimed, however, that Enriquez was the one who had killed Amada Gomez.

---

[2] Petitioner and Enriquez worked with the Gomezes' son at an air conditioning repair store and had learned (from the son) that the Gomezes kept large amounts of cash hidden in their home.

Enriquez's fingerprints were found in the home, on a mirror, however, Enriquez, in his statement to the police, denied that he had ever been in the Gomezes' home.

A grand jury returned a three-count indictment against both men, charging them with first degree murder, robbery, and burglary. At arraignment, the court appointed the public defender to represent Enriquez and a private attorney to represent petitioner.[3] Because the murder took place during the commission of two felonies, the defendants were eligible for the death penalty. Shortly after the indictment was handed down, however, the prosecutor announced, at the court's first pre-trial conference, that the State would not seek death sentences.

The defendants subsequently moved the court for a severance of their cases. The court denied their motion, and scheduled their joint trial for September 10, 1985.

B.

The case came to trial on September 10, as scheduled. Before jury selection began, both defense attorneys informed the court that their clients wished to exercise their right to be tried by a jury of twelve, rather than six, as provided by Florida law

---

[3] Leon Tozo of Miami, Florida, was appointed to represent petitioner. The Dade County Public Defender's office represented Enriquez.

for those charged with a capital felony, such as first degree murder.[4]  The prosecutor then told the court that if it was going to empanel twelve jurors, then it should death qualify them, in case "evidence [came] to light which would suggest to the court that . . . this is a death penalty case."[5]  The court denied his request to death qualify the jury.[6]  The court acceded, however, to the defendants' request that the court empanel twelve jurors, and jury selection began.  The selection process did not conclude on

_____

[4] Petitioner and Enriquez were charged with first degree murder, a "capital felony," in violation of Fla. Stat. Ann. § 782.04 (West 2000).  As a result, they were entitled to twelve jurors, see Fla. Stat. Ann. § 913.10 (West 1996), even though they were not facing the death penalty.  See State v. Joseph, 561 So. 2d 534, 534 (Fla. 1990); State v. Griffith, 561 So. 2d 528, 529 (Fla. 1990).

[5] The prosecutor evidently overlooked the fact that, at the initial pre-trial conference, he had informed the court and defense counsel that the State would not be seeking the death penalty.  That he had done so was no doubt brought to his attention (off the record), which probably explains why the record contains no further indication from the prosecutor that the death penalty would be sought.  In its brief to us on appeal, the State makes no mention of the prosecutor's attempt to obtain a death qualified jury; it therefore treats the matter as an aberration.

[6] By refusing to death qualify the jury, the trial court probably avoided reversal on appeal; less than a year later, the First District Court of Appeal decided Reed v. State, 496 So. 2d 213 (Fla. 1st DCA 1986).  In Reed, the defendant was on trial for aiding and abetting a robbery in which one of the victims was shot and killed (but not by the defendant).  The prosecution argued to the court that it should death qualify the jury because "the trial might develop facts sufficient to impose the death penalty."  Id. at 214.  The trial court agreed, and excluded for cause (on the motion of the prosecutor) a number of jurors opposed to the death penalty.  The district court of appeal held that "[w]here the State could offer no basis for leaving the death penalty in this case, it was error to permit the jury to be death qualified."  The court therefore ordered a new trial.  Id.

September 10. When it resumed the next day, defense counsel announced (in the presence of the defendants) that their clients would accept a six-person jury. Enriquez's attorney told the court that after conferring with his colleagues in the Public Defenders office, he advised his client that a jury of six would be preferable and his client agreed. Petitioner's attorney, on the other hand, made no explanation on the record for petitioner's decision to go with a jury of six. After defense counsel announced their decisions to proceed with a six-person jury, the prosecutor stated that a jury of six would be acceptable to the State.

On September 12, a jury of six (plus one alternate) was selected. The jury was not sworn, however, because the court adjourned the proceedings until September 18. On September 18, while the jurors were in the hallway outside of the courtroom waiting for the trial to begin, they engaged in a number of improper discussions; when counsel informed the court of what had happened, the court dismissed the entire panel and set a new trial date, November 5, 1985.

On November 5, jury selection began before a different trial judge. During the selection process, he asked counsel: "Am I correct that there has been a stipulation that this would be a six member jury?" The prosecutor and both defense attorneys answered in the affirmative. A jury of six (plus one alternate) was chosen, and the trial began that morning.

6

The jury convicted petitioner and Enriquez on all three counts.[7] The court sentenced petitioner to life on the first degree murder count, and consecutive twelve-year concurrent sentences on the burglary and robbery counts; the record does not indicate the sentences Enriquez received.

## II.

We now consider in order petitioner's claims, as set out in the first paragraph of this opinion. The Florida courts entertained them on the merits and have found no error. We likewise find no error.

## A.

The Sixth Amendment to the Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."

---

[7] Both defendants testified. Petitioner admitted signing a transcript of his confession to police, but claimed (contrary to the testimony of the two police officers who took his confession and the Spanish translator who served as interpreter) that, although he spoke to the police, he did not confess, nor did he know what he was signing.

Enriquez claimed that he had never been in the Gomezes' home. He attempted to explain away the presence of his fingerprints on a mirror in the Gomez home by saying that they had been placed on the mirror inadvertently after the Gomezes' son had taken the mirror to the air conditioning repair shop where he and the son worked.

In Duncan v. Louisiana, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447, 20 L. Ed. 2d 491 (1968), the Supreme Court held that the "Fourteenth Amendment guarantees a right of jury trial in all criminal cases which – were they to be tried in a federal court – would come within the Sixth Amendment's guarantee" of a trial by jury.

Two years later, the Court had occasion to address whether the Sixth Amendment requires a jury of a particular number. In Williams v. Florida, 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970), the Court rejected a challenge to Florida's jury statute, which provides a six-person jury in all non-capital cases. After reviewing the characteristics of the jury at common law, and the debate and adoption of the Sixth Amendment, the Court held that "the 12-man requirement [at common law] cannot be regarded as an indispensable component of the Sixth Amendment." Id. at 100, 90 S. Ct. at 1905. This holding disposes of petitioner's first claim: that the Sixth Amendment required that twelve persons try petitioner's case (because the indictment charged petitioner with the capital felony of first degree murder).

B.

As noted above, Florida statutory law provides that a defendant charged with a capital crime is entitled to a twelve-person jury (whether or not the death penalty is sought), and may be tried by a jury of six only when the defendant waives that right.

8

See State v. Griffith, 561 So. 2d 528, 529 (Fla. 1990) ("A defendant charged with first-degree murder[, a crime punishable by death,] has a statutory right to trial by a twelve-person jury.").[8]

The writ of habeas corpus, 28 U.S.C. § 2254 (1994 & Supp. II 1996), was not enacted to enforce State-created rights. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988). Thus, whether or not petitioner waived his right to a twelve-person jury is a matter of Florida law, not federal constitutional law. Petitioner acknowledges this point and attempts to get around it by contending, although rather obliquely, that the trial court denied him due process of law, under the Fourteenth Amendment, when it accepted his attorney's statement that petitioner had agreed to a trial before a jury of six persons instead of twelve. In other words, the court's acceptance of counsel's statement rendered the trial proceeding fundamentally unfair. Petitioner cites no authority for his position, and we find none.

Rule 23(a) of the Federal Rules of Criminal Procedure requires that a defendant in a federal court be tried by a jury "unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." In addition to a written waiver, some circuits require a trial judge to conduct a colloquy with the

---

[8] Article 1, Section 22, of the Florida Constitution states: "The right of trial by jury shall be secure to all and remain inviolate. The qualifications and the number of jurors, not fewer than six, shall be fixed by law."

9

defendant on the record to ensure that his waiver is made voluntarily, knowingly and intelligently. See, e.g., United States v. Scott, 583 F.2d 362, 364 (7th Cir. 1978). But see United States v. Tobias, 662 F.2d 381, 387 (5th Cir. Unit B 1981)[9] (refusing to adopt per se rule mandating reversal whenever defendant signs written waiver, but trial court fails "to examine him orally on the record in order to determine whether his waiver of trial by jury was made intelligently and understandingly"); United States v. Robertson, 45 F.3d 1423, 1432 (10th Cir. 1995) ("strongly urg[ing]," but declining to require, that district courts "personally . . . inform each defendant of the nature of jury trials on the record before accepting a proffered waiver"); United States v. Cochran, 770 F.2d 850, 851-52 (9th Cir. 1985) (same). Rule 23(a) and the "colloquy rule," however, are merely created as a matter of public policy to ensure that the Sixth Amendment right to an "impartial jury" is knowingly, voluntarily, and intelligently waived; they are not independent requirements of the Sixth Amendment. See United States v. Martin, 704 F.2d 267, 274 (6th Cir. 1983) ("There is no constitutional requirement that a court conduct an on the record colloquy with the defendant prior to the jury trial waiver."); United States v. Kidding, 560 F.2d 1303, 1311-12 (7th Cir. 1977) ("[H]av[ing] the record reflect that the defendant was interrogated by the trial

---

[9] In Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982), the court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

judge on the issue of voluntariness prior to the acceptance of the waiver. . . . [is not] compelled by Rule 23(a), Fed. R. Crim. P. or by the Sixth Amendment."); 2 Charles Alan Wright, Federal Procedure and Practice 2d, § 372 & n.25 (2d ed. 1982 & 2000).

Given this, we certainly cannot hold that a trial court denies the defendant a fair trial as a matter of law when it fails to obtain a defendant's waiver of a twelve-person jury on the record, when a jury of twelve is not constitutionally required in the first instance. We note in passing that the Florida Supreme Court has specifically rejected a requirement that a defendant's acceptance of six jurors be done personally and on the record. See Griffith, 561 So. 2d at 530-31 ("[W]e must disagree with the district court's holding that an effective waiver [of the right to a twelve-person jury] requires an on-the-record showing of Griffith's own personal knowing and intelligent waiver.").

We therefore reject petitioner's second claim and turn to his third: whether petitioner was denied effective assistance of counsel because his attorney agreed to six jurors.

C.

Before we undertake an after-the-fact evaluation of an attorney's performance, we first ask whether the defendant suffered any prejudice. "If it is easier to dispose

of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 2069, 80 L. Ed. 2d 674 (1984).

In order to satisfy Strickland's prejudice prong, "[a] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Petitioner bears the burden of demonstrating prejudice, see Baldwin v. Johnson, 152 F.3d 1304, 1311 (11th Cir. 1998), cert denied, 526 U.S. 1047, 119 S. Ct. 1350, 143 L. Ed. 2d 512 (1999), and we find that he has not carried it.

The record in this case is devoid of evidence that "show[s] there is a reasonable probability" that an acquittal or hung jury would have resulted had petitioner's counsel insisted on twelve jurors. Moreover, an evidentiary hearing on prejudice would be a wasteful and nonproductive exercise. In order to meet Strickland's prejudice prong, petitioner would need to recreate the courtroom scene that existed in his case on November 5, 1985, the day the process of selecting the jury began, and then somehow establish that a jury of twelve selected from the venire then present would have either acquitted him or hung. Recognizing that proceeding in such a manner would be out of the question, petitioner asks us to adopt a per se rule that a

12

defendant is always prejudiced when his counsel stipulates to six jurors instead of twelve. Although petitioner does not explicitly suggest that we take judicial notice that a jury of twelve is <u>always</u> better for the defendant than a jury of six, this is in essence what he is proposing.[10]

In order for us to take judicial notice of a fact, it must be "one not subject to reasonable dispute." Fed. R. Evid. 201. The Supreme Court itself has said that "neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members." <u>Williams</u>, 399 U.S. at 101-02, 90 S. Ct. at 1906-07 (footnotes omitted). In light of this statement, we would be hard pressed to take judicial notice that a twelve person jury always favors defendants.[11]

_____

[10] Because Florida provides six additional jurors by right to a defendant charged in a capital case, it is a common practice of defense attorneys to trade a waiver of twelve jurors for an agreement by the State not to seek the death penalty. We have previously held that such a strategic decision by defense counsel does not constitute ineffective assistance of counsel. <u>See</u> <u>Chateloin v. Singletary</u>, 89 F.3d 749, 752-53 (11th Cir. 1996). Petitioner contends that <u>Chateloin</u> stands for the proposition that it is <u>per se</u> unreasonable for counsel to accept six jurors when the death penalty is not at issue. This is not correct. In <u>Chateloin</u>, we simply "assume[d] for purposes of . . . discussion," but had no occasion to decide, "that trial counsel's waiver of the right to a twelve-person jury for 'nothing' in return is objectively unreasonable." <u>Id.</u> at 753.

[11] We note in passing that Fed. R. Crim. P. 23(b) permits the parties, with the court's approval, to stipulate "that a valid verdict may be returned by a jury of less than twelve. . . ." If petitioner is correct – that there is a material difference in terms of outcome between a jury of twelve and one of six – the adoption of Rule 23(b) was

Since the Supreme Court decided <u>Williams</u>, 399 U.S. at 101, 90 S. Ct. at 1906, however, some commentators have taken issue with the Court's conclusion that "there is no discernible difference between the results reached by the two different-sized juries." Most conclude that a hung jury is in fact more likely with a twelve-person jury as a matter of statistics, social science, and group theory.[12] The likelihood of achieving a hung jury is but one factor an attorney would consider. An attorney must also consider other facts specific to the case, like the make-up of the venire, the identity of the defendant and/or the victim(s), the strength of the state's case, the cost to the defendant of a retrial, and so on.[13]

---

ill advised, at least from the defense bar's perspective.

[12] <u>See</u> Robert H. Miller, Comment, "Six of One is not a Dozen of the Other: A Reexamination of <u>Williams v. Florida</u> and the Size of State Criminal Juries," 146 <u>U. Pa. L. Rev.</u>, 621, 650-56 & n.163 (1998) (collecting articles).

[13] The Supreme Court acknowledged in <u>Williams</u>, 399 U.S. at 101 n.47, 90 S. Ct. at 1906 n.47, that "the 'hung jury' might be thought to result in a minimal advantage for the defendant, who remains unconvicted and who enjoys the prospect that the prosecution will eventually be dropped." This advantage, of course, varies in individual cases. When the prosecution's case is very strong, the likelihood that "the prosecution will eventually be dropped" is low. On the other hand, if the prosecution's case is very weak, a defendant might want only six jurors to decrease the chance that one juror would hold out for conviction. It might be said that a hung jury is most advantageous to the defendant when the case is such that the "prospect that the prosecution will eventually be dropped" increases with the passage of time.

Whatever "advantage" a hung jury might provide, an attorney must still look at all the risks and benefits of six versus twelve, and resolve the issue based on all the circumstances, not the least of which is the composition of the venire from which the jury will be chosen.

If we were to take judicial notice that twelve jurors are always better than six – which we would need to do in order to provide petitioner relief – then we would be telling every attorney who practices in Florida[14] that he is subjecting his client to prejudice (and himself to a claim of ineffective assistance) by choosing six jurors instead of twelve when the death penalty is not at issue. We would , in effect, be foreclosing the possibility that an intelligent attorney might look at the venire, the nature of the allegations against his client, and the strength of the evidence on both sides, and decide that his client would be better off with a jury of six. This we cannot do. In short, since we cannot take judicial notice that a jury of twelve is always better for a defendant than six, we must deny petitioner's third claim.

---

[14] Our decision would also have implications for defense counsel in Alabama, which allows parties to stipulate to a jury of less than twelve, see Ala. R. Crim. P. 18.1(c) ("[W]ith the consent of the court, the defendant and prosecutor may stipulate in writing, or in open court upon the record, that the jury may consist of any number of jurors less than twelve and more than five."), and for defense counsel practicing in the district courts of this circuit, see Fed. R. Crim. P. 23(b); see also supra note 11. Georgia, however, has no comparable rule allowing stipulation by the parties to a jury of less than twelve in felony cases. Cf. Ga. Const. Art. 1, § 1, Paragraph 11(b) ("A trial jury shall consist of 12 persons; but the General Assembly may prescribe any number, not less than six, to constitute a trial jury in courts of limited jurisdiction and in superior courts in misdemeanor cases."). But see Hudson v. State, 299 S.E.2d 531, 535 (Ga. 1983) (affirming judgment against defendant when trial counsel agreed to forgo selection of an alternate juror and to accept a verdict rendered by eleven jurors); Davis v. State, 383 S.E.2d 615, 616 (Ga. Ct. App. 1989).

We now turn to petitioner's final claim, that the trial court denied him his Sixth Amendment right when, on a poll of the jury, it accepted a verdict of guilty executed only by five of the jurors.

D.

Although the Supreme Court has held that the Sixth Amendment does not require a jury of twelve, the Court has held that it requires, at a minimum, a jury of six. See Ballew v. Georgia, 435 U.S. 223, 245, 98 S. Ct. 1029, 1041, 55 L. Ed. 2d 234 (1978) (holding, in misdemeanor prosecution for obscenity, that a five-person jury "deprived [defendant] of the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments."). The Court has also held that when only six jurors are provided, the jury must be unanimous. See Burch v. Louisiana, 441 U.S. 130, 134, 99 S. Ct. 1623, 1625, 60 L. Ed. 2d 96 (1979) ("[W]e believe that conviction by a nonunanimous six-member jury in a state criminal trial for a nonpetty offense deprives an accused of his constitutional right to trial by jury [under the Sixth and Fourteenth Amendments].").[15] Petitioner contends that the court violated his right to a unanimous

_____

[15] The Court has not had occasion to decide how many jurors, and what degree of unanimity, the Sixth and Fourteenth Amendments require in capital cases. In Williams, 399 U.S. at 103, 90 S. Ct. at 1907, the Court noted that "[i]n capital cases, . . . it appears that no State provides for less than 12 jurors." At least as of 1993, all states that have the death penalty required a unanimous verdict by twelve jurors. See

16

jury under <u>Burch</u> because the clerk only polled five of the six jurors to ascertain if each agreed with the verdict, but the court accepted the verdict nonetheless. It is true that the transcript of the jury poll shows the clerk asking five jurors (including the foreman) if they agreed with the verdict. After reading the entire transcript, however, we conclude that the reporter simply failed to record the poll of the sixth juror.

The judge instructed the jurors that their verdict had to be unanimous. When the jurors returned from deliberations, the foreman stated that they had reached a unanimous verdict. The verdict form, which was signed by the foreman and read by the clerk, ended with "So say we all." After the verdict was read, both defendants' lawyers asked for a poll. The clerk then called out each juror's name and each answered that he or she agreed. Immediately thereafter, the clerk stated to the court, "They all accede in their verdict, Your Honor." Nobody objected.

We cannot imagine that, having just asked for a poll, the attorneys (or the court) would have remained mute if the clerk had forgotten to call one of the juror's names. Everyone in the courtroom would have noticed it – there were only six jurors sitting in the box. The only plausible conclusion is that the clerk did call all six jurors'

---

U.S. Dep't of Justice, Bureau of Justice Statistics, <u>State Court Organization 1993</u> 274-79 (1995).

17

names, and the reporter, in haste to get down all of the jurors' names, simply missed one.

Even assuming that the clerk did not poll one of the jurors, and that juror remained silent, petitioner has still not demonstrated that he is entitled to habeas corpus relief. Although polling the jury is a common practice, we know of no constitutional right to have a poll conducted. See United States v. Miller, 59 F.3d 417, 419 (3d Cir. 1995) (stating that a jury poll is "not of constitutional dimension"); Jaca Hernandez v. Delgado, 375 F.2d 584, 585 (1st Cir. 1967) (same); see also Madera v. Risley, 885 F.2d 646, 647-48 (9th Cir. 1989) (finding no due process violation when state court did not record certain portions of the trial, including jury poll, and instead reconstructed poll for defendant's appeal); Hatcher v. Jackson, 853 F.2d 212, 214 (3d Cir. 1988) (holding state court's refusal to have juror clarify answer during poll, as required by state law, does not violate due process). Cf. Humphries v. District of Columbia, 174 U.S. 190, 195, 19 S. Ct. 637, 639, 43 L. Ed. 944 (1899) ("Can it be that, after each of the jurors has signed the verdict, and after it has been returned, and each is present, ready to respond to a poll, the mere inability to complete the poll and make a personal appeal to each renders the entire proceedings of the trial void? We are unable to assent to such a conclusion."). Petitioner asks us conclusively to

presume that a juror who was not polled did not join in the jury's verdict. We decline

his invitation.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.