**STATE of Iowa, Appellee,**

v.

**Keteris Latron LIDDELL, Appellant.**

**No. 02–1563.**

Supreme Court of Iowa.

Dec. 17, 2003.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, William E. Davis, County Attorney, and Marc Gellerman and Robert Bradfield, Assistant County Attorneys, for appellee.

STREIT, Justice.

Keteris Liddell appeals his conviction and sentence for credit card fraud. Liddell alleges he was denied effective assistance of counsel when his trial counsel failed to challenge the validity of his jury trial waiver. Liddell also claims the district court failed to exercise its discretion when, during sentencing proceedings, the

court remarked it had no choice other than to revoke his deferred judgment.

We hold Liddell's trial counsel did not fail to perform an essential duty, and therefore reject his ineffective assistance of counsel claim. Viewing its statements in context, we also find the district court properly exercised its discretion in revoking Liddell's deferred judgment. We therefore affirm Liddell's conviction and sentence.

## I. Facts and Prior Proceedings

On August 10, 2000, a woman's purse with an ATM card was stolen from her office. Keteris Liddell used the stolen ATM card to withdraw $500 from her bank account without her permission. Liddell was charged with credit card fraud, an aggravated misdemeanor. *See* Iowa Code §§ 715A.6(2), 715A.1(2), 715A.6(1) (2001).

On April 19, 2001, Liddell signed a written waiver of his right to a jury trial. This waiver was filed in the district court, and is part of the record before us. Liddell's jury trial waiver contained three paragraphs, in which Liddell stated he understood (1) he had a right to a trial by jury of twelve persons; (2) in a jury trial, a guilty verdict must be unanimous and proven beyond a reasonable doubt; and (3) if he waived his right to a jury trial, a judge would decide whether the State proved its case beyond a reasonable doubt, and would issue its findings in writing. On June 8, 2001, a bench trial was held. The district court found Liddell guilty as charged.

On July 17, 2001, Liddell came before the district court for sentencing. The court deferred judgment for one year. *See generally* Iowa Code ch. 907 (setting forth statutory provisions for deferred judgments, sentences, and probation). If Liddell made restitution to his victim, paid court costs, and did not receive any further

convictions within the upcoming year, the court would dismiss the case.

Almost exactly a year later, on July 19, 2002, the court held a hearing to determine whether Liddell had complied with the conditions of his probation. The hearing concluded with the court continuing the matter "to allow Defendant to complete the conditions of his deferred judgment."

On September 27, 2002, the court held another hearing, at which it determined Liddell had not complied with the terms of his probation—even though the court had given him more than a year to do so. The court specifically noted the defendant had not paid restitution to his victim. Clearly frustrated with the defendant's failure to do so, the court then stated "I don't have a choice other than to revoke your deferred judgment and sentence.... When we don't have victim restitution paid, we don't have a choice." The court revoked Liddell's deferred judgment and sentenced him to 240 days in jail and a $500 fine. The court then suspended Liddell's sentence and ordered him to pay the fine, victim restitution, and court costs by February 19, 2003. On September 30, 2002, Liddell appealed.

We are presented with two issues for review: (1) Was Liddell denied effective assistance of counsel, because of an inadequate jury trial waiver? and (2) Did the district court fail to exercise its discretion when it said it did not have a choice other than to revoke Liddell's probation?

## II. Ineffective Assistance of Counsel

 Liddell alleges he was denied effective assistance of counsel. Relying upon our recent decision in *State v. Stallings*, 658 N.W.2d 106 (Iowa 2003), Liddell claims his trial counsel breached an essential duty because he failed to ensure Liddell's jury trial waiver was knowing, voluntary, and intelligent. In support of his

claim, Liddell points out the court did not conduct an in-court colloquy with him. He maintains this problem is exacerbated by the fact his written waiver failed to mention (1) he would be able to participate in *voir dire* and (2) his jury would be drawn from members of *the community* (as opposed to somewhere else). As a consequence of this alleged failure to perform an essential duty, which he characterizes as a structural error, Liddell urges us to presume prejudice and thus find he was denied effective assistance of counsel.

### A. Scope of Review

■■■ Appellate review of an ineffective assistance of counsel claim is de novo. *Stallings*, 658 N.W.2d at 108. Ineffective assistance of counsel claims are generally preserved for post-conviction relief. *Id.* (citing *State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994)). Where we are presented with an adequate record, however, the merits of the claim may be resolved on direct appeal. *Id.* The record in this case is sufficient for resolution on direct appeal.

### B. Analysis

■■■ "To establish an ineffective-assistance claim, [the defendant] must show that (1) his counsel failed to perform an essential duty, and (2) prejudice resulted." *Id.* at 108 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). Should Liddell fail to prove either prong, his ineffective assistance of counsel claim must fail. *State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997). Because we find Liddell's trial counsel did not fail to perform an essential duty, we reject his ineffective-assistance claim. In order to properly address Liddell's arguments, however, it is first necessary to briefly review *Stallings*, a recent decision regarding the adequacy of jury trial waivers.

In *Stallings*, the defendant appealed claiming the only evidence he waived his right to a jury trial appeared obliquely in his attorney's statement of fees for his bench trial. *Stallings*, 658 N.W.2d at 108. The statement of fees indicated Stallings waived his right to a jury during a hearing on a motion to suppress. *Id.* In spite of the fact Iowa Rule of Criminal Procedure 2.17(1) explicitly mandates that "[c]ases required to be tried by jury shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and on the record . . .," the record before us in *Stallings* contained "no evidence that the court was even included in the waiver process." *Stallings*, 658 N.W.2d at 112. Recognizing that "the right to a jury trial is . . . fundamental to our justice system," we determined *Stallings* was "one of those rare cases of a 'structural' defect in which prejudice is presumed." *Id.* (citing *McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir.1998)). We held the defendant's trial counsel was ineffective in failing to ensure the court complied with Iowa Rule of Criminal Procedure 2.17(1). *Id.*

Unlike *Stallings*, in this case Liddell signed a written waiver of his right to a jury trial. This waiver, which contained three paragraphs outlining some of its legal implications, was subsequently filed in the district court. Importantly, then, Liddell's waiver is part of the record before us, even though the court did not conduct an in-court colloquy with the defendant.

*Stallings* did not, as the State suggests, implicitly overrule *State v. Lawrence*, 344 N.W.2d 227 (Iowa 1984), and require an in-court colloquy. *See Lawrence*, 344 N.W.2d at 230 (in-court colloquy not required); *see also State v. Combs*, 316 N.W.2d 880, 883–84 (Iowa 1982) (stating, in dicta, the rules of criminal procedure have "no such requirement"). *United States v. Robertson,*

45 F.3d 1423 (10th Cir.1995), upon which *Stallings* repeatedly relied, expressly rejected a per se supervisory order requiring an in-court colloquy. *Robertson,* 45 F.3d at 1432 (cited in *Stallings,* 658 N.W.2d at 109–11). *But see United States v. Scott,* 583 F.2d 362, 364 (7th Cir.1978) (adopting supervisory order) (cited in *Stallings,* 658 N.W.2d at 109–10). Rather, *Robertson* and *Stallings* "strongly urge[d]" district courts to specifically inform the defendant "of the nature of [the] right [to a jury trial] and the consequences of waiving it." *Stallings,* 658 N.W.2d at 109–10.

The relevant facts of this case mirror *Lawrence,* a case which we decided nearly twenty years ago. In *Lawrence,* we directly addressed whether our rules of criminal procedure require an in-court colloquy to determine whether a defendant's waiver is knowing, voluntary, and intelligent.

In *Lawrence,* the defendant filed a jury trial waiver which both he and his attorney signed. 344 N.W.2d at 229. The court did not, however, conduct an in-court colloquy with the defendant. *Id.* Citing then Iowa Rule of Criminal Procedure 16(1), which in the respects relevant to this appeal is identical to present rule 2.17(1),[1] we said

> [D]efendant contends the record does not establish that his waiver was knowing and voluntary. The state thinks the rule, as now amended, requires only that a written waiver be placed on record. Under this view participation by the court is not required to ensure that the waiver was voluntary and intelligent. Defendant counters by pointing out that the document itself is silent on defen-

dant's level of awareness and his voluntariness.

*Id.* Although we recognized "our task ... would have been greatly simplified if the trial court had conducted even a brief proceeding in open court at which defendant could attest his waiver," we refused to conclude Lawrence's waiver was not knowing, voluntary, and intelligent. *Id.* at 230.

After discussing the history of the rule, we stated "[a]n open court proceeding is no longer expressly required...." Noting that "[t]he waiver, bare as it was, was signed by both the defendant and his trial counsel ... [and] it unquestionably was a part of the record," we held, instead, that

> a written jury waiver taken in compliance with [the] rule ... is prima facie evidence that the waiver was voluntary and intelligent. When the defendant subsequently attacks its validity, he bears the burden of proving otherwise.

*Id.* On this interpretation, "on the record" means nothing more than "in the file."

Contrary to Liddell's suggestions, *Stallings,* unlike *Lawrence,* did not directly address whether "on the record" meant "in the file" or required an in-court colloquy. Both parties correctly point out that in *Stallings* we stated

> the court should inquire into the defendant's understanding of the difference between jury and nonjury trials by informing the defendant:
> 1. Twelve members of the community compose a jury,
> 2. the defendant may take part in jury selection,
> 3. jury verdicts must be unanimous, and

---

**1.** The history of the rule prior to *Lawrence* will be explained below. After *Lawrence* was decided, the legislature made substantive changes to the rule, but these amendments are not relevant to this appeal. *See, e.g.,* 1986 Iowa Acts ch. 1106, § 1 (permitting defendants to waive rights to jury trial later than thirty days after arraignment if certain conditions are met). The rule was also renumbered in 2002.

4. the court alone decides guilt or innocence if the defendant waives a jury trial

*Stallings,* 658 N.W.2d at 111 (citing *Robertson,* 45 F.3d at 1432). Importantly, in *Stallings* we also urged judges to "ascertain whether [the] defendant is under [the] erroneous impression that he or she will be rewarded, by either court or prosecution, for waiving [a] jury trial." *Id.* (citing 2 Charles Alan Wright, *Federal Practice and Procedure* § 372, 452–53 n. 22 (3d ed.2000)).

As we recognized in both *Lawrence* and *Stallings,* an in-court colloquy is an important tool by which a court may ascertain whether a defendant's waiver of his right to a jury trial is knowing, voluntary, and intelligent. *See Stallings,* 658 N.W.2d at 111 ("practical considerations suggest that a written waiver as well as an in-court colloquy should be used to assure a proper waiver"); *Lawrence,* 344 N.W.2d at 230 (noting its "task ... would have been greatly simplified if the trial court had conducted even a brief proceeding in open court at which defendant could attest his waiver"). Taken together, the five subjects of inquiry mentioned in *Stallings* constitute a sound method by which a court in an in-court colloquy may determine whether a defendant's waiver of his right to a jury trial is knowing, voluntary, and intelligent.

■ Given the law as interpreted by *Lawrence* and left undisturbed by *Stallings,* the failure of the district court to conduct an in-court colloquy with the defendant (let alone an in-court colloquy in strict compliance with the five-part *Stallings* model) does not necessarily offend the Iowa Rules of Criminal Procedure. Applying settled *Lawrence* doctrine to the facts of the present case, we conclude Liddell has failed to prove his trial counsel failed to perform an essential duty. There

is prima facie evidence Liddell waived his right to a jury trial knowingly, voluntarily, and intelligently, because Liddell personally signed a written waiver of his right to a jury trial which is part of the record before us. *Lawrence,* 344 N.W.2d at 230. Unlike the waiver filed in *Lawrence,* Liddell's jury trial waiver stated he understood (1) he had a right to a trial by jury of twelve persons; (2) in a jury trial, a guilty verdict must be unanimous and proven beyond a reasonable doubt; and (3) if he waived his right to a jury trial, a judge would decide whether the State proved its case beyond a reasonable doubt, and would issue its findings in writing. *Cf. Lawrence,* 344 N.W.2d at 229 (upholding waiver which merely stated "Comes now defendant by his attorney and waives his right to a jury trial in this matter, and requests that this matter be tried to the court."). Liddell's waiver is prima facie evidence his waiver was voluntary, knowing, and intelligent. *Id.* at 230. Liddell bears the burden to show his waiver was not knowing, voluntary, and intelligent, but on appeal he fails to point to any evidence to suggest otherwise. *Id.* Thus we cannot conclude Liddell's trial counsel breached an essential duty; his ineffective-assistance of counsel claim must fail. *Buck,* 510 N.W.2d at 853–54 (where evidence establishes voluntary waiver, trial counsel has no duty to preserve issue for appeal and ineffective-assistance claim fails).

Insofar as Liddell's argument is predicated upon an assumption *Stallings* stood for the legal proposition that "on the record" in Iowa Rule of Criminal Procedure 2.17(1) means something more than "in the file" or, stated somewhat differently, requires more than mere acknowledgement of a written waiver in evidence, we are compelled to reconsider our holding in *Lawrence.* After careful review, we now conclude Iowa Rule of Criminal Procedure

2.17(1) requires the court to conduct an in-court colloquy with defendants who wish to waive their jury trial rights. Unlike *Stallings*, in which we were not presented with the issue, in this case we now overrule *Lawrence* in this regard.

In order to determine the meaning of "on the record" in Iowa Rule of Criminal Procedure 2.17(1), it is instructive to examine its legislative history. *See Lawrence*, 344 N.W.2d at 229–30 (detailing history of jury trial waivers in Iowa); *Richards v. Iowa Dep't of Revenue*, 362 N.W.2d 486, 488 (Iowa 1985) (legislative history a recognized and instructive tool for determining legislative intent). As we noted in *Lawrence*,

> [t]he right to waive a jury in felony cases is of rather recent vintage in Iowa. . . . For many years the right of waiver was granted only to defendants charged with no more than indictable misdemeanors and then only if in accordance with strict procedural safeguards in open court.
>
> As originally enacted [in 1976], rule 16(1) provided:
>
> Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in writing*.
>
> Before the new rule became effective, it was amended [in 1977] to read:
>
> Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in a reported proceeding in open court*.
>
> . . . The rule was amended [in 1981] to read:
>
> Cases required to be tried by jury shall be so tried unless the defendant *voluntarily and intelligently waives a jury trial in writing and on the record* . . .

*Lawrence*, 344 N.W.2d at 229–30 (citations omitted, emphases in original). In the

years after *Lawrence* was decided, the legislature has amended the rule, but these changes are not relevant to this appeal. *Compare* Iowa R.Crim. P. 2.17(1) (2002), *with* 1981 Iowa Acts ch. 206, § 16.

In *Lawrence*, we concluded "on the record" did not require an in-court colloquy with the defendant. According to this interpretation, "on the record" means nothing more than "in the record." In reaching our decision, we noted the rule, unlike a prior version, did not expressly require "a reported proceeding in open court." *Lawrence*, 344 N.W.2d at 229–30.

Re-examining the legislative history of the rule, we think "on the record" is better understood as requiring some in-court colloquy or personal contact between the court and the defendant, to ensure the defendant's waiver is knowing, voluntary, and intelligent. As the foregoing discussion indicates, prior to enactment "in writing" was deleted and "a reported proceeding in open court" was inserted. The last relevant revision to the rule simply substituted the legislative shorthand of "on the record" for "in a reported proceeding in open court." Otherwise, "on the record" means nothing more than "in the record," which the "in writing" requirement already suggests. *See State v. Pickett*, 671 N.W.2d 866, 870 (2003) (statutes should be construed to avoid absurd or superfluous results); *accord State v. Comer*, 99 Ohio St.3d 463, 793 N.E.2d 473, 478 (2003) (construing "on the record" to require oral findings at sentencing hearings). It should also be noted that we have described literal compliance with the colloquy requirement of rule 2.8(2)(*b*), which expressly requires the court to "address the defendant personally in open court," as "personally addressing the defendant on the record." *State v. Moore*, 638 N.W.2d 735, 738 (Iowa 2002).

As we recognized in *Stallings*, "[s]ome federal cases strongly suggest that the

court engage in an in-court colloquy in which the court assesses the extent of the defendant's knowledge and understanding of the waiver." *Stallings*, 658 N.W.2d at 109 (citations omitted); *Robertson*, 45 F.3d at 1432; *United States v. Christensen*, 18 F.3d 822, 825 (9th Cir.1994); *United States v. Martin*, 704 F.2d 267, 274–75 (6th Cir. 1983); *see also Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir.2000) (discussing colloquy requirements in federal courts). We have also recognized a preference for in-court colloquies, as "[i]t is clearly the better practice...." *Stallings*, 658 N.W.2d at 109 (quoting 2 Charles Alan Wright, *Federal Practice and Procedure* § 372, at 453–54 (3d ed.2000)).

▮ We do not lightly overrule our precedents. We recognize

[i]t is of the greatest importance that the law should be settled. Fairness to the trial courts, to the legal profession, and above all to citizens generally demands that interpretations once made should be overturned only for the most cogent reasons.... But this does not mean that [the law's] forward progress should be over the dead bodies of slain and discarded precedents. Legal authority must be respected; not because it is venerable with age, but because it is important that courts, and lawyers and their clients, may know what the law is and order their affairs accordingly.

*Stuart v. Pilgrim*, 247 Iowa 709, 713, 74 N.W.2d 212, 215–16 (1956). Nonetheless we have recognized "stare decisis does not prevent the court from reconsidering, repairing, correcting or abandoning past judicial announcements when error is manifest, including error in the interpretation of statutory enactments...." *Miller v. Westfield Ins. Co.*, 606 N.W.2d 301, 306 (Iowa 2000) (citations omitted). Stare decisis "should not be invoked to maintain a clearly erroneous result." *Id.* (quoting

*Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121 (Iowa 1973)); *see* Benjamin N. Cardozo, The Nature of the Judicial Process 150 (1921) ("when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment").

▮ When confronted with a case such as this one, then, a dilemma necessarily ensues. As aptly stated two generations ago,

The problem ... is whether more harm will be done by overruling our previous cases in order to install what we think is clearly the correct principle, or by adhering to an unsound decision in the interest of the rule of stare decisis.

*Stuart*, 247 Iowa at 713–14, 74 N.W.2d at 216. Mindful of the importance of stare decisis, in this case we must nonetheless overrule *Lawrence*'s erroneous interpretation of on the record. [T]he right to a jury trial is ... fundamental to our justice system. *Stallings*, 658 N.W.2d at 112. Here the interest in "install[ing] ... the correct principle" outweighs the reliance interests underpinning the rule of stare decisis.

▮ In conducting an in-court colloquy, it is important to recognize the ultimate standard to be complied with is whether the waiver is knowing, voluntary, and intelligent. To this end, a court should ascertain whether the defendant understands the difference between jury and non-jury trials, through an in-court colloquy. This inquiry may involve informing the defendant:

1. Twelve members of the community compose a jury;

2. The defendant may take part in jury selection;

3. Jury verdicts must be unanimous;

4. The court alone decides guilt or innocence if the defendant waives a jury trial; and

5. Neither the court nor the prosecution will reward the defendant for waiving a jury trial.

*See Stallings*, 658 N.W.2d at 111 (citing *Robertson*, 45 F.3d at 1432); 2 Charles Alan Wright, *Federal Practice and Procedure* § 372, 452–53 n. 22 (3d ed.2000).

We must point out, however, that these five subjects of inquiry are not "blackletter rules" nor a "checklist" by which all jury-trial waivers must be strictly judged. They merely point towards a knowing, voluntary, and intelligent waiver. The ultimate inquiry remains the same: whether the defendant's waiver is knowing, voluntary, and intelligent. In this respect, the waiver of a jury trial is no different than a guilty plea; the latter, of course, includes a waiver to a jury trial. *See* Iowa R.Crim. P. 2.8(2)(*b* ) (guilty plea is a waiver of right to a jury trial). Substantial compliance is acceptable.[2] *See, e.g., State v. Myers*, 653 N.W.2d 574, 578 (Iowa 2002) (setting forth standard for substantial compliance in guilty plea context). Just as we noted in *Stallings* that "noncompliance [with a written waiver requirement] will not necessarily invalidate a waiver of the right to trial by jury if the waiver can otherwise be shown to have been entered knowingly, voluntarily, and intelligently," neither is the failure to recite, in prayer-like fashion,

*Stallings'* five subjects of inquiry. *Stallings*, 658 N.W.2d at 110 (citing, in part, *Robertson*, 45 F.3d at 1431).

Our re-examination of our holding in *Lawrence* in no way disturbs our decision today to reject Liddell's ineffective assistance of counsel claim. Under the law in effect at the time, it would be patently unfair to adjudge Liddell's counsel ineffective for failing to foresee today's decision, which diverges from precedent. "Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel." *Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981). For waivers taking place once this decision is final,[3] however, a trial court must conduct the proceedings "on the record," in the sense that some in-court colloquy with the defendant is required in order to ensure the defendant's waiver is knowing, voluntary, and intelligent.

## III. Sentencing

Liddell alleges the district court failed to exercise its discretion when it revoked his probation after he failed to pay restitution to his victim. In support of his claim, Liddell cites the district court's statements that it had "no choice" but to revoke his probation once it determined Liddell had not made restitution to his victim. Liddell points out a sentencing

---

2. It should be noted the Iowa Rules of Criminal Procedure set forth different standards for accepting a jury trial waiver and a guilty plea. In the guilty plea context, substantial compliance is therefore more particularized. In accepting a jury trial waiver, rule 2.17(1) requires the defendant waive his right to a jury trial knowingly, voluntarily, and intelligently, in writing and on the record. *See* Iowa R.Crim. P. 2.17(1); *accord Stallings*, 658 N.W.2d at 110 ("the record should ... establish the defendant made a knowing, voluntary, and intelligent decision on waiver"). Unlike the rule governing the acceptance of a guilty plea, the rule for jury trial waivers does not enumerate specific rights and consequences of which the court must inform the defendant. *Compare* Iowa R.Crim. P. 2.17(1), *with* Iowa R.Crim. P. 2.8.

3. "Unless otherwise ordered by the supreme court, no procedendo shall issue for 15 days after an opinion of the supreme court is filed, nor thereafter while a petition for rehearing, filed according to these rules, is pending." Iowa R.App. P. 6.30.

judge has several options when a defendant fails to comply with the terms of his or her probation, including granting a continuance. *See* Iowa Code §§ 908.11(6), 907.3(1). Viewing the district court's statements in context, we reject Liddell's claim.

## A. Scope of Review

 We review sentencing challenges for errors at law. *State v. Grandberry,* 619 N.W.2d 399, 401 (Iowa 2000). "A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure, such as trial court consideration of impermissible factors." *Id.* (citations omitted).

## B. Analysis

 The district court has discretion in sentencing Liddell. *See* Iowa Code §§ 908.11(6), 907.3(1). "When a court has discretion in sentencing, it must exercise that discretion." *State v. Johnson,* 630 N.W.2d 583, 590 (Iowa 2001) (quoting *State v. Ayers,* 590 N.W.2d 25, 27 (Iowa 1999)). "When the court fails to exercise its discretion, the sentence must be vacated and the case remanded for resentencing." *Id.*

We disagree with Liddell's claim the district court's statements are evidence it erroneously believed it lacked discretion to revoke Liddell's deferred judgment. Viewed in context, the statements do not show the district court was unaware of the availability of other courses of action or had a policy against granting deferred judgments unless the defendant paid restitution to his victim.

At the first sentencing hearing, the district court considered several factors, including Liddell's age and prior criminal history, in deferring judgment and sentence. This decision was conditioned upon Liddell making restitution to his victim

and paying court costs within one year, as well as not receiving any further convictions during this probationary period. If Liddell failed to abide by the terms of his probation, the court concluded he would not deserve a deferred judgment.

After Liddell failed to make restitution to his victim, despite a court order, a second chance, and over a year to do so, the following exchange took place:

> THE COURT: What is this? And you have not even made your victim restitution good now? It is September and you have had over a year. I don't have a choice other than to revoke your deferred judgment and sentence....
>
> ....
>
> THE COURT: Mr. Giese, anything you want to say before I impose sentence?
>
> MR. GIESE [Liddell's trial attorney]: No, although he has made some payments.
>
> THE COURT: He has not paid very much for a year. When we don't have victim restitution paid, we don't have a choice.

Viewed in context, the court's comments express its understandable frustration with Liddell's disregard for the welfare of his victim, whom he had still not repaid. This is not a case in which the sentencing judge announced a policy against granting deferred judgments in the absence of restitution. *See, e.g., State v. Hildebrand,* 280 N.W.2d 393, 395 (Iowa 1979) (sentencing judge abused discretion in refusing to grant deferred judgments in OMVUI cases in which there was an accident, stating "I have the policy that when there is an accident involved, I do not and will not grant a deferred sentence"). Here, the district court clearly recognized it had discretion in imposing sentence; any suggestion to the contrary fails to recognize the

court had already continued the hearing once in order to give Liddell a second chance to meet the terms of his probation.

Instead, in the initial sentencing hearing, the court, in the exercise of its discretion, expressed its willingness to grant Liddell a deferred judgment, *on the condition* he pay court costs and restitution. When Liddell failed meet one of the conditions of the court's order, he proved himself an unsuitable candidate for a deferred. Colloquially speaking, *the choices Liddell made took the choices from the judge.* The court's statements are not unlike those of a parent, who, after discovering his or her child pummeling a sibling, says "I have no choice but to send you to your room." The parent is well-aware other options are available, but in the exercise of discretion, thinks a trip to the room is the best punishment on this occasion.

## IV. Conclusion

Liddell has failed to show his trial counsel failed to perform an essential duty. We cannot, therefore, conclude he was denied effective assistance of counsel. We also refuse to find the district court abused its discretion in revoking Liddell's probation. We affirm his conviction and sentence for credit card fraud.

**AFFIRMED.**

All justices concur except CADY, J., who concurs specially.

CADY, Justice (concurring specially).

I agree with the result reached by the majority but disagree with that portion of the decision that overrules *Lawrence* and interprets rule of criminal procedure 2.17(1) to require an in-court colloquy in order for a defendant to waive a jury trial in a criminal case.

Our standard for overruling our precedents is not easily satisfied. We do so "only for the most cogent reasons," and only when error is manifest. *Stuart,* 247 Iowa at 714, 74 N.W.2d at 215–16; *accord Miller,* 606 N.W.2d at 306. The concept of stare decisis is an important bedrock principle in our system of justice and allegiance to precedent is a significant factor in the enduring strength of our judicial system.

My view of the waiver rule is based on my respect for the doctrine of stare decisis and the constitutional roles of the legislature and this court. The legislature has enacted a rule governing waiver of jury trials in a criminal case pursuant to its constitutional role, and we have previously interpreted that rule pursuant to our constitutional role. Although the rulemaking authority now largely rests with this court, the rule at issue was enacted by the legislature and we are obligated to interpret it pursuant to their original intent. *See* Iowa Code §§ 602.4201, 602.4202.

A brief review of the history of rule 2.17(1) reveals the improvident action of the majority in overruling *Lawrence.* This history is important because it helps explain the legislative development of rule 2.17(1). At the time our legislature originally enacted rule 2.17(1) in 1976, courts around the nation had begun debating the type of procedure necessary for a defendant to waive the right to a jury trial in a criminal case. The debate focused on whether the waiver should be made in writing or whether an in-court colloquy was needed. Ultimately, what emerged from this debate was that courts preferred an in-court colloquy, but such a strict procedure was not constitutionally required. *See Martin,* 704 F.2d at 274–75, 2 Wright § 372, at 453–54. We have taken this same position. *See Stallings,* 658 N.W.2d at 109–11.

As originally enacted, rule 2.17(1) required the waiver to be "reported . . . in

open court." Thus, our legislature clearly chose the strict in-court colloquy standard initially. Yet, in 1981 our legislature changed the rule to require the waiver to be "in writing and on the record." In light of the historical background showing there was a constitutionally permissible choice between the two standards, it is most logical to believe our legislature decided to reconsider the in-court colloquy standard it initially adopted and adopt the lesser writing standard. I find no support for the idea formulated by the majority that the legislature intended to adopt *both* standards by adding the specific "in writing" requirement and replacing the clear language of the original rule with a generic phrase that, under the majority's analysis, did not truly change the rule's original meaning.

Moreover, we decided *Lawrence* three years after the 1981 legislative change to the rule. In *Lawrence*, we interpreted the generic phrase "on the record" to mean in the record, and held that the rule only required the waiver to be in writing. Significantly, the rule has not been amended since the *Lawrence* decision by this court or the legislature. This inaction must be viewed as a sign that *Lawrence* is the accepted position today. *See State v. Anderson*, 517 N.W.2d 208, 214 (Iowa 1994). If we want to change our long-standing interpretation of the rule originally enacted by the legislature, we should do so by changing the rule itself pursuant to our rulemaking powers, not by overruling our established precedent.

Ultimately, nothing has changed since *Lawrence* to justify the decision of the majority, and we should not assume that we know more today about the legislative intent behind the language of rule 2.17(1), nineteen years after we decided *Lawrence*. Instead, we should make our decision today based on those fundamental principles that guide all judicial decision-making, and strike out in a different direction from established precedent "only for the most cogent reasons." *Stuart*, 247 Iowa at 714, 74 N.W.2d at 215–16. No such reasons exist to support the decision of the majority in this case.