# IN THE COURT OF APPEALS OF IOWA

No. 16-0122
Filed May 3, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DALE KUZMICKI,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Pocahontas County, Kurt J. Stoebe, Judge.

Defendant appeals his conviction for gathering where controlled substances are used, in violation of Iowa Code section 124.407 (2015), and possession of methamphetamine (third offense), in violation of section 124.401(5). **AFFIRMED.**

Jennifer Bonzer of Johnson and Bonzer, Marshalltown, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Dale Kuzmicki was arrested and charged with (I) gathering where controlled substances are used, in violation of Iowa Code section 124.407 (2015), (II) possession of methamphetamine (third offense), in violation of section 124.401(5), and (III) possession of marijuana (third offense), in violation of section 124.401(5). Kuzmicki waived his right to trial by jury, and the case proceeded to bench trial. The district court found Kuzmicki guilty on counts I and II and not guilty on count III. On appeal, Kuzmicki challenges the sufficiency of the evidence supporting his convictions. He also contends his trial counsel provided constitutionally deficient representation in failing to ensure Kuzmicki's waiver of his right to trial by jury was knowing and voluntary.

We first address Kuzmicki's challenge to the sufficiency of the evidence. The claim is properly before us; there is no need to preserve error when the matter is tried to the court. *See State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997). The standard of review is well established:

> Sufficiency of evidence claims are reviewed for correction of errors at law. In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it. We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational [trier of fact] that the defendant is guilty beyond a reasonable doubt. Inherent in our standard of review of . . . verdicts in criminal cases is the recognition that the [trier of fact] is free to reject certain evidence, and credit other evidence.

*State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014).

The record reflects Pocahontas Police Officer Travis Lampe was dispatched to the residence of Dale and Tracy Kuzmicki to respond to a dispute about a dog. There were several people outside the residence when Lampe arrived, including Kari Sweeney, her daughter, and James Keck, all of whom were seated in a van parked at the residence. Lampe determined Sweeney was the owner of the van, and he checked her license. The check revealed Sweeney had an outstanding warrant. Lampe told Sweeney he was going to take her into custody. Lampe agreed Keck could take the child. Lampe also agreed Keck could go inside the home to use the restroom before leaving with the child.

By this time, Kuzmicki and his wife Tracy had exited the home to inquire why Lampe was there. Lampe explained he was responding to a dispute regarding a dog. The dispute involved Mike and Elizabeth Nelson. Mike had contacted the police for assistance in the return of his dog from Elizabeth. Elizabeth and the dog were both at the Kuzmicki residence when Lampe arrived. Kuzmicki offered to go inside the house and retrieve the dog. When Kuzmicki went into the house, Keck asked Kuzmicki to help him escape through a back window in the house. Kuzmicki refused, stating he did not want the police to enter the house because he had "drugs and paraphernalia in the house." Keck then went and hid in an upstairs closet.

While Kuzmicki and Keck were in the house, Lampe and Tracy remained outside the house. Lampe determined from Tracy that either Keck had given him false identity information or Lampe had misheard the information. Regardless, after learning Keck's real name and conducting a check, Lampe determined there was an active arrest warrant for Keck. Lampe radioed for assistance. He

asked Tracy to go inside the residence and tell Keck to come out. Tracy went inside. When she exited the residence, she told Lampe that Keck had left the residence. Lampe suspected this was false information because he had been observing the doors of the residence and had not observed Keck leave. Lampe told Tracy he was going to go inside and get Keck after the other officers arrived at the scene. Shortly thereafter, Keck exited the residence. Lampe placed Keck under arrest and transported him to the Pocahontas County Jail.

Lampe interviewed Keck at the jail. Keck stated he had made arrangements to purchase drugs from Kuzmicki and was at the residence to buy methamphetamine. Keck told Lampe there were drugs and paraphernalia throughout the residence.

Based on Keck's information, Lampe successfully applied for a search warrant of the residence. He and other officers executed the search warrant at the home at approximately 10:30 p.m. the same day. There were five unrelated adults at the residence at the time the warrant was executed. The officers discovered drugs and drug paraphernalia throughout the house. For example, they discovered in the kitchen: a light bulb modified for use as a pipe to smoke methamphetamine; syringes inside a microwave; a digital scale; a soda bottle fashioned into a bong that contained a blue liquid that tested positive for methamphetamine; and a bottle cap with methamphetamine residue. In the defendant's bedroom, the officers discovered the following: a glass methamphetamine pipe; plastic bags containing methamphetamine residue; equipment and materials used in the manufacture of methamphetamine; a recipe card detailing the process of manufacturing methamphetamine; a razor; tinfoil;

plastic bags; and a metal pipe containing marijuana. There was another bedroom in the home where officers discovered the following: spoons and tubes with residue on them; and a camera bag containing methamphetamine, syringes, and tubes. The officers arrested Kuzmicki and the others at the scene.

With respect to count I, the code provides, "It is unlawful for any person to sponsor, promote, or aid, or assist in the sponsoring or promoting of a meeting, gathering, or assemblage with the knowledge or intent that a controlled substance be there distributed, used or possessed, in violation of [chapter 124]." Iowa Code § 124.407. Contrary to Kuzmicki's contention, the State is not required to prove recent use. *See State v. Dukes*, No. 09-0062, 2009 WL 3379088, at *2 (Iowa Ct. App. Oct. 21, 2009) (explaining the state need only prove "knowledge or intent that a controlled substance be there distributed, used, or possessed").

We conclude there was substantial evidence supporting Kuzmicki's conviction for gathering where controlled substances are used. There were many unrelated adults at the residence when Lampe first arrived at the residence and when the officers returned at night to execute the warrant. There were tents set up in the yard. Keck drove to the Kuzmickis' home to purchase methamphetamine. He or his girlfriend called beforehand to confirm Kuzmicki had possession of and was in fact selling methamphetamine. Kuzmicki admitted to Keck he had drugs and paraphernalia in the home, which was confirmed when the officers executed the warrant. There was a substantial amount of drugs, drug residue, and drug paraphernalia throughout the home. When the evidence is viewed in the light most favorable to the verdict, each element was supported by

substantial evidence. *See, e.g., State v. Carter*, 582 N.W.2d 164, 167 (Iowa 1998); *State v. Cartee*, 577 N.W.2d 649, 653 (Iowa 1998).

With respect to count II, "[u]nlawful possession of a controlled substance requires proof that the defendant: (1) exercised dominion and control over the contraband, (2) had knowledge of its presence, and (3) had knowledge that the material was a controlled substance." *State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). "Proof of opportunity of access to the place where contraband is found will not, without more, support a finding of unlawful possession." *Id.* The State may show either "actual possession" or "constructive possession." *See Thomas*, 847 N.W.2d at 442. "Constructive possession exists when the evidence shows the defendant 'has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'" *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (citation omitted). Constructive possession may be inferred when drugs are found on property in the defendant's exclusive possession. *Id.* When a person does not have exclusive possession of the residence, additional proof is necessary. *Id.* Factors to consider in determining whether the defendant possessed contraband discovered in a jointly occupied residence include: incriminating statements made by a person; incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; the person's fingerprints on the packages containing the controlled substances; and any other circumstances linking the person to the controlled substance. *Id.* at 706.

There was substantial evidence Kuzmicki unlawfully possessed methamphetamine. Kuzmicki and his wife rented the home. One could

reasonably infer Kuzmicki had knowledge of the methamphetamine present in the home because it was easily found or easily observable. Keck testified he went to the home to purchase methamphetamine from Kuzmicki. Kuzmicki confirmed, in the phone call, that he had possession of methamphetamine and was selling it. Kuzmicki also acknowledged his possession of the drugs when Keck asked for assistance in escaping through the back window. Kuzmicki's wife told the officers executing the warrant that the methamphetamine belonged to Kuzmicki.

We next address Kuzmicki's claim his counsel was ineffective. Ineffective-assistance-of-counsel claims are an exception to the error preservation requirement. *State v. Stallings*, 658 N.W.2d 106, 108 (Iowa 2003), *overruled on other grounds by State v. Feregrino*, 756 N.W.2d 700, 707 (Iowa 2008). Although such claims are generally preserved for postconviction-relief actions, we will address them where the record is adequate to permit a ruling. *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005).

We review claims of ineffective assistance of counsel de novo. *See State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003). To establish a claim, a defendant must show counsel failed to perform an essential duty and prejudice resulted. *See State v. Keller*, 760 N.W.2d 451, 452 (Iowa 2009). With respect to the first element, "counsel's performance is measured against the standard of a reasonably competent practitioner, with the presumption that the attorney performed his duties in a competent manner." *Id.* On the second element, the defendant must show "but for counsel's error, there is a reasonable probability

that the results of the trial would have been different." *Id.* Failure to prove either element defeats the entire claim. *See Liddell*, 672 N.W.2d at 809.

A jury trial is required unless a "defendant voluntarily and intelligently waives a jury trial in writing and on the record." Iowa R. Crim. P. 2.17(1). To ensure the waiver is knowing, voluntary, and intelligent, the court must personally address the defendant. *See Liddell*, 672 N.W.2d at 813. "[A] court should ascertain whether the defendant understands the difference between jury and non-jury trials, through an in-court colloquy." *Id.* It has been suggested the court inform the defendant (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) jury verdicts must be unanimous, (4) the court alone decides guilt or innocence if the defendant waives a jury trial, and (5) neither the court nor the prosecution will reward the defendant for waiving a jury trial. *Id.* at 813–14. The five subjects of inquiry are neither "'black-letter rules' nor a 'checklist' by which all jury-trial waivers must be strictly judged." *Id.* at 814. "Substantial compliance is acceptable." *Id.* The "ultimate inquiry" is "whether the defendant's waiver is knowing, voluntary, and intelligent." *Id.*

Kuzmicki argues the court made no efforts to ascertain whether he believed he would be rewarded in some way for waiving a jury trial. Kuzmicki contends he was prejudiced as a result of his lawyer's failure to compel such an inquiry because the record shows Kuzmicki thought it would be advantageous to waive a jury trial (i.e., he would be rewarded for doing so). We conclude the record is inadequate to resolve the claim, and we preserve the claim for postconviction-relief proceedings. *See Feregrino*, 756 N.W.2d at 707–08

(explaining a violation of required colloquy (jury trial waiver) does not necessarily prove the defendant failed to actually understand the issue).

For the foregoing reasons, we affirm the defendant's convictions.

**AFFIRMED.**