# IN THE COURT OF APPEALS OF IOWA

No. 18-0736
Filed May 1, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SAMANTHA BAILEY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Audubon County, Susan Christensen, Judge.

        Samantha Bailey appeals from judgment and sentences entered following her plea of guilty to two counts of child endangerment and one count of neglect of a dependent person. **AFFIRMED.**

        Eric D. Puryear and Eric S. Mail of Puryear Law P.C., Davenport, for appellant.

        Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Samantha Bailey appeals from judgment and sentences entered following her plea of guilty to two counts of child endangerment and one count of neglect of a dependent person. Because the district court did not abuse its discretion in denying Bailey's late-filed motions, the court did not err in imposing consecutive sentences for two counts of child endangerment, and there is a factual basis for her pleas, we affirm.

**I. Background Facts and Proceedings.**

On April 8, 2017, Bailey invited her two-year-old and five-year-old grandchildren to stay the night at her home.[1] When the children were dropped off, Bailey was not at home and the children's mother left them with Bailey's paramour. Bailey returned home from a casino at 5 a.m. on April 9, placed her purse on the floor near a dollhouse where the children played, and fell asleep.

Later that morning, Wierninga saw the contents of Bailey's purse spilled on the floor of the front porch. The five-year-old was eating a piece of candy from the purse, and the two-year-old was searching for Easter eggs using the purse as her basket. About an hour later, Wierninga found what she believed to be methamphetamine and disposed of it in the sink.

When the children's father arrived to pick them up on the morning of April 9, he noticed Bailey asleep on the couch and the contents of her purse spilled on the floor. He also saw drugs scattered on the floor. The father noticed the

---

[1] On the night of April 8-9, 2017, there were six other minors in Bailey's home. Three of those children lived with Bailey—her own twelve-year-old daughter, a nine-year-old grandchild, and her twelve- or thirteen-year old grandchild. Another grandchild also spent the night, as did adult Tammy Wierninga and her two children, an eleven-year-old and fifteen-year-old.

children were acting strangely. He took the children to their mother's house where the older child began to experience vacillating emotions. The father called Bailey, who admitted she had Adderall in her purse.[2]

The mother took the children to a local hospital. The youngest child was having severe seizures and was in acute respiratory failure. She was intubated, placed on a ventilator, and given anti-seizure medications. The five-year-old exhibited seizures, hallucinations, and slurred speech. The children were later life-flighted to a larger hospital.

Deputy Sheriff David Beane went to Bailey's home on the afternoon of April 9. Bailey gave the officer permission to search for the pills the children had taken. The officer had been told that the children had gotten into Bailey's purse that had been on the floor of the porch. So, he first dumped out Bailey's purse. He found a sealed bottle of a pain reliever, but no other drugs. He then searched the porch and found a capsule of cephalexin.[3] The deputy seized the pill; Bailey told him there should have been two of those pills.

The deputy continued to search. Bailey was crying. She told the deputy there had been six Adderall pills in her purse and that she could not find any of them. She stated she did not have a prescription for the Adderall. Bailey also told the deputy that there had been approximately one gram of methamphetamine in her purse in a green wrapper. The deputy called the hospital to advise that the children may have taken methamphetamine. He went

---

[2] Adderall, a brand name, is a combination of amphetamine and dextroamphetamine. https://www.webmd.com/drugs/2/drug-63163/adderall-oral/details, last visited on April 15, 2019.

[3] Cephalexin is an antibiotic. https://www.webmd.com/drugs/2/drug-11757/cephalexin-oral/details, last visited on April 15, 2019.

back and shook Bailey's purse, and a small rock fell out of it. Bailey identified the rock as methamphetamine and exclaimed "what a piece of shit" she was for doing this to her grandchildren. She told the deputy she had been up painting her bathroom until 2:30 a.m. on April 9, when a friend called to invite her to go to the casino as it was Bailey's birthday. Bailey and her friend went to the casino and Bailey got home at 5:30 a.m. Everyone was asleep when she got home, so Bailey went to bed. She told the deputy that she left her purse on the floor of the porch near a dollhouse where the young grandchildren were known to play.[4]

A drug screen revealed that both children had methamphetamine, Ecstasy, and benzodiazepines in their systems.[5]

Officers executed a search warrant at Bailey's home on April 13, 2017. In the residence, they found small zip-lock bags with trace amounts of what appeared to be methamphetamine and marijuana, pills in a foil wrapper, an aspirin bottle containing marijuana, and several items of drug paraphernalia with residue inside.

Bailey was charged with two counts of child endangerment resulting in serious injury. The trial information was later amended to add two counts of neglect of a dependent person.

---

[4] Bailey was interviewed again later and denied having left her purse on the porch floor, claiming she had left it on the floor of her bedroom.

Some of the minors who had been in the house were interviewed. Bailey's thirteen-year-old daughter stated Wierninga showed her a bag that had come from Bailey's purse. The bag contained a long, skinny tube with a round bottom that looked like it had been burnt, a small scale, and some small baggies. The daughter also saw a second bag that contained crystals and white powder. Wierninga told the girl that she was going to throw the "meth" in the toilet and throw the rest in the trash.

[5] The children recovered.

On February 12, 2018, Bailey pled guilty to two counts of child endangerment resulting in serious injury and one count of neglect of a dependent person. In exchange for her plea, the State agreed to seek a maximum of twenty years in prison and to dismiss the second neglect count. The district court accepted Bailey's pleas, finding them to be voluntarily and intelligently entered. Sentencing was delayed so Bailey could seek substance-abuse treatment out of state.

Two and one-half months after pleading guilty—and one hour before the April 23 sentencing hearing was to begin—a new attorney filed an appearance for Bailey and filed motions in arrest of judgment and to withdraw the guilty pleas; the new attorney did not appear at the hearing. Bailey and her former attorney were present. The district court contacted the new attorney by telephone. The court denied the late-filed motions but allowed a three-day continuance to permit new counsel to be present at sentencing.

On the day before the new sentencing hearing, Bailey filed a motion to amend, enlarge, and reconsider the court's ruling and a motion to continue. The district court denied the motions. Bailey was sentenced to ten years of imprisonment on each of the three counts. The two child-endangerment terms were to run consecutively to each other but concurrently with the ten-year neglect term.

Bailey appeals, contending the district court improperly denied her motion to withdraw her plea and motion in arrest of judgment. Bailey also asserts she is actually innocent, the district court abused its discretion in imposing consecutive

sentences, there is not a factual basis to support the pleas, and plea counsel was ineffective in allowing her to plead guilty.

**II. Scope and Standards of Review.**

We review the denial of a motion in arrest of judgment and a motion to withdraw a plea for an abuse of discretion. *State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008). We will reverse only if the ruling was based on reasons clearly unreasonable or untenable. *Id.* "A ruling is untenable when the court bases it on an erroneous application of law." *Id.*

We review claims of an illegal sentence for correction of errors at law. *State v. Petty*, ___ N.W.2d ___, ___, 2019 WL 1302674, at *3 (Iowa 2019). We review a sentence within the permissible statutory guidelines for an abuse of discretion. *State v. Majors*, 897 N.W.2d 124, 127 (Iowa 2017). Sentencing decisions of the district court are cloaked with a strong presumption in their favor. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of discretion or a defect in the sentencing procedure, such as trial court consideration of impermissible factors." *State v. Liddell*, 672 N.W.2d 805, 815 (Iowa 2003).

Constitutional claims, such as ineffective assistance of counsel, are reviewed de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Discussion.**

**A. Untimely motion in arrest of judgement and motion to withdraw guilty plea.** The State argues Bailey's motion in arrest of judgment was untimely and the fact that she did not select a new attorney until after her deadlines ran

does not establish that the district court abused its discretion in refusing to make an exception to the deadline. We agree.

Iowa Rule of Criminal Procedure 2.24(3)(b) provides that a motion in arrest of judgment "must be made not later than [forty-five] days after plea of guilty . . . but in any case not later than five days before the date set for pronouncing judgment." Bailey's motion met neither the forty-five day nor the five-day time frame. We find no abuse of discretion in the district court's denial of Bailey's late-filed motions here.

As set out above, Bailey had more than two months to file her motion in arrest of judgment. Yet she did not file the motion until one hour before the scheduled sentencing. Bailey asserts the district court had discretion to consider the untimely motion in arrest of judgment because she had just retained new counsel who filed the motions at the earliest opportunity. She contends her last-minute retention of a new attorney should be excused because her prior attorney failed to communicate with her, failed to advise her properly, and failed to listen to her concerns. This claim is essentially one of ineffective assistance of counsel, which is better dealt with in possible postconviction proceedings to allow the development of the record. *See State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009) ("We will address on direct appeal claims of ineffective assistance of counsel only if we determine the development of an additional factual record would not be helpful and these elements can be decided as a matter of law."). The district court did not abuse its discretion in denying the late-filed motions here.

**B. Claim of actual innocence.**  Bailey did not timely challenge her guilty plea before the district court, "and a direct appeal from an uncontested guilty plea is not a viable vehicle to introduce a claim of actual innocence."  *State v. Shultsev*, No. 17-1766, 2018 WL 4923139, at *3 (Iowa Ct. App. Oct. 10, 2018).  "At this stage, we simply have a bare allegation [of actual innocence] unsupported by evidence or affidavits."  *Id.* (citation omitted).  The plea record does not satisfy Bailey's burden to show by clear and convincing evidence that no reasonable fact finder could convict her of child endangerment and neglect of a dependent.  *See Schmidt v. State*, 909 N.W.2d 778, 790, 797 (Iowa 2018)) (recognizing a free-standing claim of actual innocence and stating a defendant must prove an innocence claim by clear and convincing evidence).

**C. Consecutive sentences.**  Bailey next asserts the consecutive sentences on the two counts of child endangerment causing serious injury constitute an illegal sentence because she is being punished twice for the same course of conduct.

An illegal sentence is one not authorized by statute.  *State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000).  However, "[i]f the legislature criminalizes two separate and distinct acts, separate sentences on each act are not illegal."  *State v. Copenhaver*, 844 N.W.2d 442, 447 (Iowa 2000).

"Determining legislative intent raises issues of statutory interpretation; thus, our review is for correction of errors at law."  *Id.*  In *Copenhaver*, the supreme court agreed with the defendant that the use of the term "any"[6] was to

---

[6] "[T]he legislature has defined the unit of prosecution for robbery based upon the actions of the defendant."  *Copenhaver*, 844 N.W.2d at 448.  The first element requires

be read as plural, and therefore, "[i]f the defendant intends to commit only one theft, there can only be one robbery no matter how many assaults occur while the defendant intends to commit the theft." 844 N.W.2d at 449. Yet, the court found there was evidence to establish two separate and distinct thefts. *Id.* at 450-51.

Child endangerment is defined as:

> A person who is the parent, guardian, or person having custody or control over *a child or minor* under the age of eighteen with a mental or physical disability, or a person who is a member of the household in which a child or such a minor resides, commits child endangerment when a person does any of the following:
> (a) Knowingly acts in a manner that *creates substantial risk to a child* or minor's physical, mental or emotional health or safety.

Iowa Code § 726.6(1)(a) (emphasis added). "[T]he State must prove a defendant acted with knowledge that he or she was creating a substantial risk to the child's safety." *State v. Millsap*, 704 N.W.2d 426, 430 (Iowa 2005)

Section 726.5(1) refers to a single child or minor; therefore, the child-endangerment statute permits a separate charge and conviction for each child or minor endangered. *See id.* at 435 (upholding consecutive sentences on the defendant's convictions for two counts of child endangerment based upon his conduct in placing two young children in the bed of his pickup truck on a pile of

---

the defendant to have the intent to commit a theft. *Id.* ("The Code defines theft as 'when the person . . . [t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.'" (alterations in original) (citing Iowa Code § 714.1)). The *Copenhaver* court noted that, pursuant to section 711.1, the second element of robbery is shown if the defendant does:
> *any* of the following acts to assist or further the commission of the intended theft . . . :
> (1) Commit[] an assault upon another.
> (2) Threaten[] another with or purposely put[] another in fear of immediate serious injury.
> (3) Threaten[] to commit immediately any forcible felony.
*Id.* (alterations in original).

brush); *see also State v. Schnieders*, No. 14-1675, 2015 WL 4233382, at *4 (Iowa Ct. App. July 9, 2015) (holding the district court did not err by imposing consecutive sentences to encompass the defendant's four convictions for child endangerment where there were two child victims and multiple injuries suffered over a period of months); *cf. State v. Kidd*, 562 N.W.2d 764-65 (Iowa 1997) (concluding the statute prohibiting the possession of "an offensive weapon" referred to the possession of a single weapon and thus possession of each weapon is a separate offense). The district court did not err in imposing sentences on each count related to the individual children.

Bailey also argues the district court considered an improper factor in sentencing. This claim arises from the court's passing statement that Bailey's conduct led to four counts being filed and her plea on three counts. We are not persuaded that the court's statement shows the court considered or relied upon the fourth charge in imposing sentence. We find no error.

**D. Factual basis.**

Finally, Bailey contends her counsel was ineffective in allowing her to plead guilty because there was no factual basis that she "knowingly" acted in a manner to create substantial risk to support the pleas to child endangerment. An attorney breaches an essential duty in allowing a client to plead guilty where there is no factual basis for the charge. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). "In deciding whether a factual basis exists, we consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence report." *Id.*

Bailey agreed the court could rely upon the minutes of testimony and agreed they were substantially accurate. The minutes show that Bailey placed her purse containing several controlled substances on the floor near children's playthings. The minutes also include Bailey's own comments and distress when the deputy searched for the pills the children might have ingested. These circumstances offer support that Bailey "knowingly" acted in a manner to create substantial risk to each of the children. *See id.* at 789 ("[T]he facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from these facts and circumstances, may be relied upon to ascertain the defendant's intent."); *see also State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013) (affirming the district court's finding of a factual basis and noting "the minutes of testimony provide sufficient evidence from which a jury could infer that [the defendant] had the requisite intent"). Because a factual basis exists to support Bailey's guilty pleas, her ineffectiveness claim fails. We affirm the convictions and sentences imposed.

**AFFIRMED.**