# IN THE SUPREME COURT OF IOWA

No. 96 / 07–0236

Filed October 3, 2008

**STATE OF IOWA,**

Appellee,

vs.

**JOHN FEREGRINO, JR.,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Gary K. Anderson, Judge.

State seeks further review of court of appeals' decision reversing conviction for ineffective assistance of counsel. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert Ranschau, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Kyle Jones and Christine Shockey, Assistant County Attorneys, for appellee.

**APPEL, Justice.**

In this case, a criminal defendant raises two constitutional questions arising out of his conviction for driving a motor vehicle while intoxicated. First, the defendant challenges the validity of an investigatory stop based on a violation of a local noise ordinance which he claims is unconstitutionally vague. Second, he challenges the validity of his jury-trial waiver where he signed a written waiver explaining in some detail the consequences of the waiver, but where the oral colloquy before the court was conclusory in nature. On further review, we hold that the defendant's claims are without merit on the current record.

## I. Factual and Procedural Background.

At about four a.m. on July 4, 2006, Carter Lake Police Officer Ron Hansen heard loud music emanating from a motor vehicle from an approximate distance of one hundred feet. The officer activated his emergency lights and pulled the vehicle over to the side of the road. The officer advised the driver, John Feregrino, Jr., that he was stopped for violation of a municipal noise ordinance.

During the stop, Hansen detected a strong odor of alcohol coming from Feregrino. Hansen also noticed that Feregrino's eyes were bloodshot and watery and that his speech was slurred. Hansen performed the horizontal gaze nystagmus test, which indicated intoxication. Although Feregrino consented to a preliminary breath test, no result was obtained due to Feregrino's inability or unwillingness to exhale. Hansen placed Feregrino under arrest for operating a motor vehicle while intoxicated (OWI). The results of a DataMaster test later showed Feregrino's blood-alcohol level to be 0.199.

Feregrino was subsequently charged with first offense OWI in violation of Iowa Code section 321J.2 (2005) and violation of the municipal noise ordinance. He filed a motion to suppress the evidence of his intoxication, claiming that the officer lacked probable cause or reasonable suspicion to stop Feregrino's vehicle because the noise ordinance which allegedly justified the stop was unconstitutionally vague. The district court rejected this contention.

Prior to trial on November 14, Feregrino signed a written waiver of his right to a jury trial. The written waiver stated: (1) he had been fully advised by his attorney that he had a right to be tried by a twelve person jury under the state and federal constitutions and the Iowa Rules of Criminal Procedure; (2) that by waiving a jury trial he would no longer be able to help in the selection of a jury; (3) that unanimity of twelve persons will no longer be required for conviction; and (4) that his case would be decided by a single judge. For reasons not revealed in the record, the written waiver was not filed until November 29. Feregrino does not dispute, however, that he signed the waiver prior to his bench trial.

Also prior to trial, the district court engaged in a short colloquy with the defendant:

> THE COURT: Mr. Feregrino, you've had a sufficient amount of time to talk to [defense counsel] Mr. Heithoff?
>
> THE DEFENDANT: Uh-huh, yes, sir.
>
> THE COURT: And you wish to waive a jury trial and submit the case as indicated by Mr. Heithoff?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Very well.

The matter proceeded to trial before the district court. Feregrino was convicted of first offense OWI. The district court dismissed the charge of violating the noise ordinance because someone other than the arresting officer had improperly amended the original citation.

Feregrino appealed his conviction, reasserting his vagueness argument. Feregrino also asserted an ineffective-assistance-of-counsel claim, arguing that his jury-trial waiver did not meet the standards this court established in *State v. Stallings*, 658 N.W.2d 106, 111 (Iowa 2003). Relying on *Stallings*, Feregrino further claimed that prejudice should be presumed because of this structural defect.

We transferred the case to the court of appeals. The court of appeals reversed Feregrino's conviction, finding ineffective assistance of counsel. We granted further review.

## II. Standard of Review.

This court engages in de novo review of constitutional claims arising from motions to suppress. *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998). The adequacy of a jury-trial waiver is a mixed question of fact and law which we decide de novo. *Stallings*, 658 N.W.2d at 108. We also consider a claim of ineffective assistance of counsel de novo. *Id.*

## III. Discussion.

**A. Constitutionality of Noise Ordinance.** Feregrino's first claim is that the evidence of intoxication introduced at trial was unlawfully obtained. According to Feregrino, the underlying noise ordinance, which was the basis of Officer Hansen's stop, is so vague that it violates due process of law. As a result, Feregrino argues that the evidence of intoxication is fruit of the poisonous tree and should have been excluded at trial.

The ordinance in question, Carter Lake Municipal Ordinance 55.12(cc), provides:

> The following circumstances are considered per se violations as being loud, raucous, and disagreeable noises causing disturbance to the general public and a violation of this Chapter:
>
> > a. Noise emanating from a motor vehicle that can be heard from a distance of one-hundred (100) feet or more.

The Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article I, section 9 of the Iowa Constitution prohibit enforcement of statutes that are so vague that they do not provide citizens with fair warning of what conduct is prohibited and encourage discriminatory law enforcement.[1] *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903, 909 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 2299–300, 33 L. Ed. 2d 222, 227–28 (1972); *State v. Todd*, 468 N.W.2d 462, 465 (Iowa 1991). In addition, where a vague statute abuts upon sensitive areas protected by the First Amendment, care must be taken to ensure that criminal statutes do not cause persons to steer far wider of

---

[1]While Feregrino cites both the Iowa and United States constitutional provisions related to due process, he does not present any argument suggesting that the due process clause under the Iowa Constitution should be interpreted differently than under its counterpart in the United States Constitution. We zealously guard our ability to interpret provisions of the Iowa Constitution differently than binding interpretations of the United States Constitution. *In re Detention of Garren*, 620 N.W.2d 275, 280 n.1 (Iowa 2000). As a result, an interpretation of the United States Supreme Court, though binding on this court with respect to the meaning of a provision of the United States Constitution, does not provide controlling authority on the question of the proper interpretation of a similar provision under the Iowa Constitution. If a party declines to offer a different interpretation under the state constitution and the reasons in support of that different interpretation, the issue of a potentially disparate approach to the state constitutional provision may not be properly illuminated through the adversary process. As a result, prudential concerns ordinarily mean that where an argument that the Iowa Constitution should be construed differently than the United States Constitution is not presented, we assume for the purposes of the case that the provisions should be interpreted in an identical fashion. *Id.*

the unlawful zone in order to avoid criminal prosecution.  *See Grayned*, 408 U.S. at 109, 92 S. Ct. at 2229, 33 L. Ed. 2d at 228.

In this case, Feregrino does not claim that the ordinance impinges upon his First Amendment rights.  His only claim is that the ordinance is so vague that it does not provide reasonable notice to him and encourages arbitrary enforcement.  As a result, we do not consider any potential overbreadth challenge.  We only consider whether the Carter Lake noise ordinance was unduly vague as to him.

We reject the claim which Feregrino advances.  Feregrino was charged under the provision of the ordinance that per se prohibits "[n]oise emanating from a motor vehicle that can be heard from a distance of one-hundred (100) feet or more."  Carter Lake Mun. Code § 55.12(cc).  There is nothing unconstitutionally vague about this provision of the Carter Lake ordinance.

A person of ordinary understanding would know that cranking up the car radio to extraordinarily loud levels will expose the operator to a citation for violation of the ordinance.  *See Davis v. State*, 537 S.E.2d 327, 329 (Ga. 2000); *State v. Medel*, 80 P.3d 1099, 1103 (Idaho Ct. App. 2003); *Holland v. City of Tacoma*, 954 P.2d 290, 295 (Wash. Ct. App. 1998).  Turning up the volume in a car radio so that it can be heard one hundred feet away is far louder than needed to be heard by car occupants and cannot be confused with ordinary use.

It may not be easy to measure whether noise emanating from a vehicle reaches one hundred feet, but this is not a problem of vagueness.  Indeed, if the one-hundred-foot requirement were stricken, the resulting ordinance would give less notice, not more to the ordinary person.  *Moore v. City of Montgomery*, 720 So. 2d 1030, 1032 (Ala. Crim. App. 1998) (noting distance standards provide explicit guidelines to those charged

with enforcing a noise ordinance). What Feregrino raises is not a question of vagueness, but a problem of proof that inheres in any criminal statute that incorporates explicit measurements into its substantive elements. Whether Officer Hansen could hear the vehicle at a distance of one hundred feet presents a question of fact to be attacked through cross-examination and the adversary process, not a legal issue to be argued to the court.

The per se prong of the ordinance also is not so vague as to encourage discriminatory enforcement. The prong under which Feregrino was charged does not apply to particularly-defined types of noise: it applies if a motor vehicle operator is blasting the music of Beethoven or Rihanna, the latest from a Hawkeye, Cyclone, or Panther athletic contest, or the details of a special deal on vinyl home siding. The fact that the ordinance focuses on *all* loud noises rather than specific loud noises, for vagueness purposes, is a strength rather than a weakness. *See Thelen v. State*, 526 S.E.2d 60, 62 (Ga. 2000) (noting use of vague and subjective terms such as "unnecessary," "unusual," and "annoying" in noise ordinance renders ordinance unconstitutional).[2] The officer in this case only needs to determine the objective fact of whether the volume of the noise is sufficient to be heard one hundred feet from the vehicle, rather than exercising subjective judgment concerning the type of noise involved. *Davis*, 537 S.E.2d at 329; *Holland*, 954 P.2d at 295.

---

[2]The question of whether a defendant may be charged under the Carter Lake ordinance for noise found to be "loud," "raucous," or "disagreeable," but not subject to the per se provision, is not before the court. We therefore express no opinion on this issue.

For the above reasons, we conclude that the provision of the Carter Lake noise ordinance under which Feregrino was stopped is not so vague as to violate due process.

## B. Ineffective Assistance of Counsel.

The right to a jury trial is, of course, a distinguishing feature of the American criminal justice system. The right to a jury trial allows a group of ordinary citizens, and not a single judge, to determine the factual question of guilt. The right to a jury trial thus has the potential of holding the government in check and preventing government overreaching or persecution. The right to a jury trial is widely accepted as a fundamental constitutional right.

Iowa Rule of Criminal Procedure 2.17(1) is designed to protect a defendant's constitutional right to a jury trial. The rule provides that criminal "[c]ases required to be tried to a jury shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and on the record. . . ." Two of our recent cases have explored the contours of the requirements of this rule.

In *Stallings*, this court considered a case where the defendant did not execute a written waiver of his right to a jury trial and the court did not conduct an in-court colloquy with the defendant informing him of his jury trial right. *Stallings*, 658 N.W.2d at 108. In *Stallings*, we noted that rule 2.17(1) was based on practical considerations which suggested that a written waiver as well as an in-court colloquy should be used to assure a proper jury-trial waiver. *Id.* at 111. We further stated that a written waiver alone is not sufficient to satisfy the dual criteria of the rule, noting that the requirement of the rule that a defendant make a knowing and intelligent waiver "on the record" was distinct from the requirement of a written waiver. *Id.* at 110. We held in *Stallings* that a failure to assure

compliance with the rule constituted a breach of duty by trial counsel. *Id.* at 112.

In *Stallings,* we also considered whether a defendant who demonstrated a violation of rule 2.17(1) was required to show prejudice to obtain reversal of a subsequent conviction by the court. *Id.* While ordinarily a defendant claiming ineffective assistance of counsel must show both a breach of duty and prejudice, *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984), we held in *Stallings* that a violation of the rule amounted to "one of those rare cases of a 'structural' defect in which prejudice is presumed." *Stallings,* 658 N.W.2d at 112.

In *State v. Liddell,* 672 N.W.2d 805 (Iowa 2003), this court further considered the phrase "on the record" as used in rule 2.17(1). We held that the phrase required "some in-court colloquy or personal contact between the court and the defendant, to ensure the defendant's waiver is knowing, voluntary, and intelligent." 672 N.W.2d at 812. While the *Liddell* court declined to provide a specific checklist for the content of the court inquiry, we stated that the inquiry "may" involve informing the defendant (1) that twelve members of the community compose a jury; (2) that the defendant may take part in jury selection; (3) that jury verdicts must be unanimous; (4) that the court alone decides guilt or innocence if the defendant waives a jury trial; and (5) that neither the court nor the prosecution will reward the defendant for waiving a jury trial. *Id.* at 813–14. The five subject areas were not designated to create "black letter rules," but merely helpful tools to determine whether a waiver was "knowing, voluntary, and intelligent." *Id.* at 814. Substantial compliance was characterized as "acceptable." *Id.*

In this case, Feregrino signed a written waiver of his right to a jury trial but engaged in a limited colloquy with the court. Feregrino argues that the conclusory in-court colloquy in this case does not meet the standards for a knowing and voluntary waiver on the record as required in *Liddell* and, as a result, counsel breached his duty to ensure a valid waiver of a jury trial. Feregrino further asserts that under this court's decision in *Stallings*, prejudice should be conclusively presumed because of the structural defect.

The State in this appeal does not challenge Feregrino's assertion that his counsel breached his duty of care under *Liddell* by failing to ensure that a detailed in-court colloquy was conducted on the record. Instead, the State asserts that the holding in *Stallings* that prejudice must be presumed in cases where there has been a violation of rule 2.17(1) should be overruled.

The State supports its position by questioning the analysis in *Stallings*. The State argues the cases cited in *Stallings* for the proposition that failure to conform with the requirements of rule 2.17(1) amounted to a structural defect are distinguishable. In the first case cited by the *Stallings* court, *McGurk v. Stenberg*, 163 F.3d 470, 475 (8th Cir. 1998), the defendant was not informed at all of his right to a jury trial either by counsel or the trial court and, as a result, proceeded to trial by the court without ever knowing of his constitutional right to a jury trial. In the second case cited in *Stallings*, *United States v. Raether*, 82 F.3d 192, 193 (8th Cir. 1996), the defendant was in fact deprived of his right to a jury trial, which he wanted, when the trial court failed to submit instructions on an essential element of the crime. The State suggests that the "structural" defect in *McGurk* and *Raether*, was that the defendants were actually or functionally deprived of their right to a jury trial.

Unlike in *McGurk* and *Raether*, the State contends that the record here does not reveal a structural deprivation of a constitutional right to a jury trial, but merely failure to comply with the procedural requirements of rule 2.17(1). The State argues that a nonconstitutional error or failure to comply with the rule is simply not comparable to structural errors found by the United States Supreme Court in cases involving complete deprivation of the right to legal counsel or involving trial before a biased trial judge. *See Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927). Such "structural" errors involve defects " 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718, 728 (1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265, 113 L. Ed. 2d 302, 331 (1991)).

In cases involving ineffective assistance of counsel, the Supreme Court has held that prejudice may be presumed where: (1) counsel is completely denied at a crucial stage of the proceeding; (2) where counsel fails to subject the prosecution's case to meaningful adversary testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, for example, where counsel has an actual conflict of interest in jointly representing multiple defendants. *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047, 80 L. Ed. 2d 657, 668 (1984). The State argues that *Cronic* narrows rather than expands the universe of ineffective-assistance-of-counsel cases where prejudice is to be presumed. In support, the State directs our attention to a gallery of federal appellate court cases where prejudice has not been presumed in cases involving claims of ineffective assistance of counsel in connection

with jury-trial waivers, as well as to our own cases prior to *Stallings* that adopted a similar approach. *See, e.g., Sowell v. Bradshaw*, 372 F.3d 821, 836–38 (6th Cir. 2004); *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998); *Hensley v. Crist*, 67 F.3d 181, 184–85 (9th Cir. 1995); *State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994); *Jasper v. State*, 477 N.W.2d 852, 857 (Iowa 1991).

The State finally points out that the *Stallings* rule is inconsistent with a recent ruling of this court involving acceptance of guilty pleas. In *State v. Straw*, 709 N.W.2d 128, 137–38 (Iowa 2006), this court refused to accept a per se rule of prejudice where there is a deficiency in the court colloquy and acceptance of a guilty plea. The State argues that the holdings in *Straw* and *Stallings* on the issue of prejudice are inconsistent. Under *Straw*, a defendant who pleads guilty waives all of his constitutional trial rights, including his right to a jury trial. In the *Straw* guilty plea setting, we have held that a defendant claiming ineffective assistance of counsel based on a lack of a knowing and voluntary waiver of the right to a jury trial must show actual prejudice, while in a *Stallings* setting, where trial to the court has actually occurred after an apparent waiver of the right to jury trial, a showing of prejudice is not required. *Straw*, 709 N.W.2d at 137–38; *Stallings*, 658 N.W.2d at 112.

We agree with the State. As an analytical matter, we find the reasoning in *Stallings* unconvincing. The fact that the requirements of rule 2.17(1) have not been met does not necessarily mean that a violation of the defendant's right to a jury trial has in fact occurred.[3] As noted

---

[3]Nothing in this opinion undercuts the salutary purpose of rule 2.17(1), which is designed to ensure that a defendant is informed of his right to a jury trial and to create a clear record with respect to any waiver. We hold only that a violation of rule 2.17(1)

recently by the Pennsylvania Supreme Court, a requirement of an oral colloquy related to a jury-trial waiver is a procedural device, not a constitutional end or a constitutional "right." *Commonwealth v. Mallory*, 941 A.2d 686, 697 (Pa. 2008). The absence of an oral colloquy or a written waiver does not necessarily prove that a defendant failed to understand the nature of the right waived by proceeding to a non-jury trial. *Id.* For example, a lawyer who is accused of a crime or a career criminal might have considerable first-hand knowledge of the right to a jury trial. *Id.*[4]

As a result, whether there has been such an alteration of the fundamental trial framework in violation of the defendant's right to a jury trial depends on the resolution of an antecedent question, namely, whether, notwithstanding the violation of the rule, the defendant knowingly and voluntarily waived his right to a jury trial. The antecedent question of whether a defendant knowingly or voluntarily waived a jury trial presents a question of historical fact. It does not require the court to speculate on whether the outcome in the case would have changed if a different fact-finding process, namely, trial to a jury, had occurred. Resolution of the waiver issue is no more difficult than countless other factual questions that are resolved by our courts every day. If as a

_____

does not, in and of itself, mean that there has been a deprivation of the constitutional right to a jury trial.

[4]Although the facts in *McGurk* are distinguishable from those in this case, our analysis in this opinion is inconsistent with *McGurk*. The appellate court opinions in *McGurk* indicate that there was no written waiver, no in-court colloquy, and no discussion between the defendant and his counsel with respect to the jury-trial wavier. *McGurk*, 163 F.3d at 472; *State v. McGurk*, 532 N.W.2d 354, 359 (Neb. Ct. App. 1995). The record as reported in the appellate cases does not, however, conclusively demonstrate that the defendant did not knowingly and voluntarily waive his right to a jury trial. The lack of a written waiver, in-court colloquy, and discussion with counsel may be important evidence in a postconviction proceeding, but might not be sufficient to carry the day if the evidence shows that the defendant was otherwise well-informed about his right to a jury trial.

matter of fact the waiver was knowingly and voluntarily given, no infringement of a constitutional right or structural defect is present.

The doctrine of stare decisis counsels caution before we overturn prior precedent of this court. At the same time, we should not look away from decisions that are analytically unsound and inconsistent with our subsequent case law. We find it better to correct our error now rather than ignore the problem. The holding in *Stallings* that prejudice is presumed in cases involving a deficiency in a jury-trial waiver under rule 2.17(1) is overruled.

We next turn to the question of whether, on the present record, we can determine whether Feregrino was actually prejudiced by his counsel's failure to obtain a jury-trial waiver that complied with the rule. The record before us is inadequate to make this determination. *State v. Leckington*, 713 N.W.2d 208, 218 (Iowa 2006). We therefore preserve the issue for postconviction relief.

### IV. Conclusion.

We hold that the provision of the municipal ordinance noise under which the defendant was stopped was not unconstitutionally vague. Evidence obtained pursuant to the stop, therefore, was properly admitted. We further hold that a defendant claiming ineffective assistance of counsel due to counsel's failure to ensure compliance with the jury-trial waiver provisions of Iowa Rule of Criminal Procedure 2.17(1) must show, not only that counsel breached an essential duty, but must also show actual prejudice. On this point, *Stallings* is overruled. Because the record on appeal is inadequate to resolve the issue of prejudice, we preserve Feregrino's ineffective-assistance-of-counsel claim for postconviction relief.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Baker, J., who takes no part.