# IN THE COURT OF APPEALS OF IOWA

No. 15-2222
Filed February 8, 2017

**JEREMY MICHAEL GIBLER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski (motion for summary disposition) and Jeffrey L. Larson (postconviction), Judges.

The applicant appeals the district court decision denying his request for postconviction relief from his convictions for first-degree kidnapping, attempted murder, and first-degree robbery. **AFFIRMED.**

Patrick A. Sondag of Sondag Law Office, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., Mullins, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Jeremy Michael Gibler appeals from the denial of his application for postconviction relief.

## I.  Background Facts and Proceedings

On December 17, 2009, Gibler and David Maddox went for a drive accompanied by another gentleman, who became their victim.  Gibler was in the backseat, Maddox was driving, and the victim was in the front-passenger seat.  Maddox drove to the banks of the Missouri River where he stopped.  Gibler struck the victim on the back of the head, and Maddox pulled him out of the car.  The victim was dragged by Maddox, and followed by Gibler, to the river's edge, where he was forced to the ground and hit and kicked by both Gibler and Maddox.  Gibler went through the victim's pockets and took whatever he could find, including his cell phone.

Maddox told the victim he was a snitch and people like him belonged in the river.  Maddox threw the victim into the river and threw a large rock at him, which forced him into shoulder-depth water.  The victim observed Gibler searching for rocks, which he assumed were to be thrown at him, but he did not see Gibler throw a rock.  The victim was swept down the stream with the current to where he was able to get out.  He ended up walking one-and-two-thirds miles in subfreezing weather to a gas station.  The victim was taken to an emergency room, where he was examined.  Medical personnel testified the victim had multiple injuries to his face, a nasal fracture, and a concussion, and in addition to other injuries, he suffered from hypothermia.

Maddox and Gibler were tried together. Both were convicted of first-degree kidnapping, attempted murder, and first-degree robbery. On direct appeal, Gibler's first-degree kidnapping conviction was reversed and the matter was remanded for entry of judgment for third-degree kidnapping. *State v. Gibler*, No. 10-0986, 2011 WL 6654897, at *5 (Iowa Ct. App. Dec. 21, 2011). The reversal was predicated on the State's failure to establish a serious injury, which is a required element in the first-degree-kidnapping charge. *Id.* at *5. Counsel failed to preserve error, but the reversal was based on ineffective assistance of counsel. *Id.* Gibler also claimed that the district court had erred in failing to sever his trial from the trial of Maddox, but we denied the claim, stating the defendants' defenses were not "irreconcilable and mutually exclusive" such that Gibler was prejudiced by the joint trial. *Id.* at *2. Accordingly, the district court had not abused its discretion in denying the motion to sever. *Id.* The issue of ineffective assistance of counsel as to other issues was left for postconviction proceedings. *Id.* at *6.

Gibler filed this application requesting postconviction relief on May 24, 2012. His request for relief was denied. On appeal, he has requested relief, claiming trial counsel was ineffective for failing to: (1) make a proper motion for acquittal; (2) raise the issue of the inadmissible DNA analysis and conduct the severance hearing when he was not personally present; (3) object to erroneous, incomplete and improper jury instructions; and (4) object to the court's omission of its reasons for ordering consecutive sentences. He finally claims the cumulative errors as set out above resulted in denying him a fair trial and appellate counsel was ineffective for not raising the above issues.

## II. Error Preservation

Gibler's application for postconviction relief is based on a claim of ineffective assistance of trial counsel, followed by ineffective assistance of appellate counsel. An exception to the ordinary rules of error preservation exists when a claim of ineffective assistance of counsel is made. *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). The State did not contest error preservation on any issue raised by the petitioner.

## III. Standard of Review

Appeals from the denial of a postconviction-relief application are ordinarily reviewed for corrections of law, but when a constitutional issue such as a claim of ineffective assistance of counsel is involved, it is reviewed de novo. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

## IV. Discussion

### A. Ineffective Assistance of Counsel Generally

To prevail on a claim of ineffective assistance, a claimant must prove by a preponderance of the evidence that: (a) counsel failed to perform an essential duty and (b) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance must overcome the presumption that counsel is competent. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation but only that level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). In reviewing counsel's effectiveness, we do not take on the role of a Monday morning quarterback and view the proceedings with twenty-twenty hindsight. *Fryer v. State*, 325 N.W.2d 400, 414 (Iowa 1982).

Counsel has no obligation to make a meritless claim. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). For relief to be granted, there must be a determination that but for the ineffective assistance, there is a reasonable probability the result would have been different. *Ledezma*, 626 N.W.2d at 145. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or admission of counsel would meet that test." *Strickland v. Washington*, 466 U.S. 668, 693 (1984).

Ineffective assistance of appellate counsel may be considered based on appellate counsel's failure to raise ineffective assistance on direct appeal. *Ledezma*, 626 N.W.2d at 141. To prove appellate counsel's failure resulted in prejudice, the applicant must show that ineffective assistance of trial counsel would have prevailed on direct appeal. *Id.* Thus we turn immediately to the claims against trial counsel.

*B. Motion for Acquittal*

Gibler claims that counsel made an inadequate motion for acquittal. This claim inferentially involves Gibler's contention that Maddox was much more involved than he was in the actions constituting criminal acts for which Gibler was convicted. Based on the evidence, the jury could have found Gibler struck the victim from behind while still in the car and immediately before or while Maddox was in the process of pulling the victim out of the car. Maddox led the victim to the river bank, while Gibler followed to make sure he could not turn back and escape. The victim was forced to the ground, and both Maddox and Gibler hit and attacked the victim while he was down. Gibler was the one who took the

victim's cellphone so he could not call for help, if he ever had the opportunity to do so, and also took everything else he could find in the victim's pockets. It is true Maddox was the one that accused the victim of being a snitch, threw him in the river, and threw the only rock that hit the victim, but Gibler was scrambling and looking for an appropriate rock and possibly threw a rock or rocks that did not strike the target. It is obvious that Gibler and Maddox had a plan and both were involved in its execution. There was sufficient evidence to support the jury's finding Gibler was guilty of attempted murder, third-degree kidnapping and first-degree robbery, as either a principal or as an aider and abettor.

*C. The Motion to Sever*

The severance issue was already considered on the direct appeal. "Any ground finally adjudicated or not raised . . . in the proceeding that resulted in the conviction or sentence . . . may not be the basis for a subsequent application." Iowa Code § 822.8 (2011). A postconviction proceeding is not a vehicle to relitigate issues that have been previously litigated. *State v. Wetzel*, 192 N.W.2d 762, 764 (Iowa 1971). It may not be clear that ineffective counsel was considered as to the issue of the severance hearing on the direct appeal, but it is obvious that ineffective assistance of counsel and the severance hearing were both considered by the appellate court.

In any event, Gibler does not advance any theory that challenges or impeaches the conclusion of the trial court that Gibler's defense and Maddox's defense were not irreconcilable and mutually exclusive. Instead, Gibler attacks counsel's representation in failing to raise a factual issue that had no bearing on whether his and Maddox's defenses were mutually exclusive and irreconcilable—

a non-testimonial identification order that permitted a sample of his DNA to be taken. If the attack on the DNA sample had been successful, it would have been easy for the State to obtain a new sample. The State did introduce a sweatshirt that had the DNA of Gibler, Maddox, and the victim on it, which provided some evidence that Gibler was present at the scene of the attack. However, the evidence that Gibler, Maddox, and the victim were all at the scene was not contradicted by any evidence and is unassailable. The DNA evidence had no bearing on the severance issue.

Gibler asserts the severance hearing was conducted in his absence and counsel failed to object. A defendant is entitled to be present at all critical stages of a trial. *State v. Foster*, 318 N.W.2d 176, 179 (Iowa 1982). An accused is not guaranteed a right to be present when his presence would be useless. *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id.* At the proceeding, the police reports and the State's interviews of Gibler and Maddox were put into the record and counsel argued the motion. No testimony was taken. There was no factual dispute, and the arguments were about the conclusions that could be drawn from the known facts. Gibler has not indicated in any way his presence would have contributed to the fairness of the severance hearing or assist in establishing the defenses of Gibler and Maddox were irreconcilable and mutually exclusive. Neither Maddox nor Gibler testified. In the absence of any testimony or factual dispute or any indication of how his presence would have contributed to the fairness of the procedure, we conclude that Gibler

had no constitutional right to be present during the arguments. *See id.* Accordingly, counsel was not ineffective for failing to assure his presence. This is not to say that a defendant does not ever have a constitutional right to be present at a severance hearing, but Gibler did not establish counsel was ineffective in failing to secure his presence under the present factual situation.

D. *Instructions*

Gibler asserts the instructions on aiding and abetting were incorrect and not appropriate to the attempted murder charge because the trial information on the attempted murder charge did not allege he aided and abetted in the offense. He also contends that if there is no separate marshalling instruction on an aiding and abetting charge, a jury must be given special interrogatories or some other inquiry made so that it can be determined whether a defendant was convicted as a principal or as an aider and abettor. Finally, he contends that where alternative methods of committing a crime exist, the alternative the jury relied on in returning its verdict of guilty must be established by either special interrogatories or by a separate marshalling instruction as to each alternative and presumably with separate verdict forms.

A party does not need to be charged with aiding and abetting to warrant an instruction on aiding and abetting, but instead, aiders and abettors may be tried as principals. Iowa Code § 703.1; *State v. Black*, 282 N.W.2d 733, 735 (Iowa 1979). From *Black* and the statute, we can also reach the following conclusions: (1) it is not necessary to have a special interrogatory to determine whether a defendant was found guilty on an aiding and abetting theory or as a principal, (2) it is not necessary to have an aiding and abetting charge as an

alternative on each of the marshalling instructions, and (3) it is not necessary to have a separate marshalling instruction for aiding and abetting, as opposed to a marshalling instruction on the principal charge. *Id.*

The instructions used in this case contained the uniform instruction on aiding and abetting without the inclusion of the recommended instruction to be used where there is a joint trial and specific intent is an element of the charge. However, on each of the marshalling instructions for robbery, kidnapping, and attempted murder, the requirement of specific intent was included as a required element. Furthermore, the court instructed the jury it must determine the guilt or innocence of each party separately and included verdict forms accordingly. A court's instructions must be evaluated all together, rather than singularly. *State v. Shanahan*, 712 N.W.2d 121, 140 (Iowa 2006).

Gibler contends that when there are alternative means of committing a crime under a specific statute, a special interrogatory must be used to determine which alternative the jury is relying on in rendering its decision. He gives an example of where a robbery charge presents three alternatives for finding the defendant guilty but there is no way of knowing which alternative the jury relied on.

It is true that when different factual transactions are presented to the jury and the instructions read as if any one of the factual situations could constitute a valid criminal charge, a potential problem is created. If there is a conviction and it is later determined that one of the factual situations does not create a valid charge, there is no way of knowing which factual situation the jury relied on. *State v. Lathrop*, 781 N.W.2d 288, 297 (Iowa 2010); *State v. Hogrefe*, 557

N.W.2d 871, 881 (Iowa 1996). This rule has no application to the charges in this case. When the statute creating the crime presents alternative methods or acts that can constitute the crime, it is not necessary that the jury set out which alternative supported their guilty verdict. *State v. Bratthauer*, 354 N.W.2d 774, 776-77 (Iowa 1984).

Gibler also complains about counsel's failure to object to an instruction providing that no inference can be drawn from Gibler's failure to testify. The instruction is to be given or not given at an accused's direction. *State v. Kimball*, 176 N.W.2d 864, 869 (Iowa 1970). Trial counsel testified that he did not discuss the instruction with Gibler. Gibler takes the position that *Kimball* requires that a defendant must personally request or refuse the no-inference instruction. The no-inference instruction is not present in the instructions regarding Maddox's failure to testify.

The record reflects there was an "off the record" or informal consideration of the proposed instructions before the final instructions were put together and the actual record made. When the formal instructions were submitted to counsel, Maddox's counsel wanted to make sure the no-inference instruction had been removed before he proceeded to make any record. The court assured him it had been withdrawn. Gibler's counsel did not request that it be withdrawn as to his client. Immediately thereafter, record regarding the instructions was made. Gibler's counsel clearly indicated he had no objections to the final set of instructions, which had included the no-inference instruction as to Gibler. It is obvious counsel knew the no-inference instruction was included and had made the decision to have it submitted. *Kimball* does not say that the decision to use

or not use the no-inference instruction must be made by each defendant personally and not through counsel. *See id.* Gibler's counsel's failure to object to the proposed instructions with the no-inference instruction included was a tacit request to have it submitted. To have it submitted is a constitutional right, and it is an error not to submit it when a request is made. *State v. Griffin*, 576 N.W.2d 594, 595-96 (Iowa 1998).

To have the no-inference instruction included was a trial strategy of counsel. Miscalculated trial strategies do not rise to the level of ineffective assistance. *Ledezma*, 626 N.W.2d at 143. Gibler complains that there is no way he can claim prejudice because we do not know what the result would have been if the instruction had not been given. This is usually the case when considering miscalculated trial strategies.

Gibler also objects to counsel's failure to request an instruction on the lesser included offense of assault on the robbery charge. A "jury's rejection of a greater-included offense negates a defendant's claim of prejudice due to a trial court's failure to submit an instruction on a lesser-included offense." *State v. Negrete*, 486 N.W.2d 297, 299 (Iowa 1992).

Gibler also objects to the instruction using words that are not further defined. Words in an instruction need not be defined if they are generally understood in the context in which they have been used. *State v. Wiess*, 528 N.W.2d 519, 520 (Iowa 1995). Sometimes the same word may have a well understood meaning, but it can also be a word of art in a legal proceeding, which requires a definition of its legal meaning. Gibler contends it is error to use a word, for example like "theft," in an instruction to convey its usual and accepted

meaning. Instead, he contends it should also be defined in its legal sense and the use of the word without its legal definition is error. Gibler cites no authority for the proposition and to make such a requirement would be inconsistent with the general concept of required definitions as set out in *Wiess*. *See* Iowa R. App. P. 6.903(2)(g)(3) (noting appellate arguments must be supported by authority). Considering the context in which words of ordinary use appeared in Gibler's instructions we find no error.

Gibler objects to the court's instruction using plural pronouns and the term "defendants" when referring to Gibler and Maddox. The parties were jointly charged and acted together. Plural pronouns were appropriate. The court made it clear that guilt and innocence of each party must be determined separately and separate verdict forms for each party were included.

*E. Prejudice*

We have not found that counsel was ineffective for failing to perform any required duty. Even if we did, Gibler is required to establish prejudice before he can obtain a new trial on the basis of ineffective assistance of counsel. Instead of establishing or arguing prejudice, Gibler maintains counsel's ineffectiveness was such that prejudice need not be shown. *See State v. Feregrino*, 756 N.W.2d 700, 707 (Iowa 2008).

> In cases involving ineffective assistance of counsel, the Supreme Court has held that prejudice may be presumed where: (1) counsel is completely denied at a crucial state of the proceeding; (2) where counsel fails to subject the prosecution's case to meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, for example, where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Id.* None of the alleged instances of Gibler's ineffective assistance of counsel rise to that level, even if we found counsel did not perform an essential duty.

Gibler asserts the cumulative effect of the asserted deficiencies of counsel rise to the point of ineffective assistance. The cumulative effect of ineffective assistance can impact the fairness of the proceeding. *Schrier v. State*, 347 N.W.2d 657, 668 (Iowa 1984). We have not found that counsel failed to perform an essential duty as to any claim, therefore, the cumulative effect of the claimed errors is not applicable. *See State v. Clay,* 824 N.W.2d 488, 501 (Iowa 2012). Furthermore, even if one or more of the claims had been established, Gibler was not denied a fair trial, nor did he suffer prejudice.

*F. Sentencing*

Gibler contends that the court abused its discretion in imposing consecutive sentences of twenty-five years on both the attempted murder and first-degree robbery charge. The district court is required to set out its reasons for sentencing. Iowa R. Crim. P. 2.23(3)(d). The reason for imposing a particular sentence may be short, terse, and succinct. *State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015). The rule applies when consecutive sentences are imposed. *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000). "The court may correct an illegal sentence at any time." Iowa R. Crim. P. 2.24(5)(a).

In sentencing, the court stated, "[M]aking Counts II and III consecutive, again, I think your past history as I am aware of them from the files as well as the circumstances of the offense warrant making the sentences for Counts II and III consecutive." The sentencing was conducted as a joint sentencing as to both Gibler and Maddox.

Gibler did not challenge the sentencing procedure or its brevity but instead asserts that a fair reading from the entirety of the sentencing transcript shows that the court was addressing only Maddox. We do not agree that a fair reading of the transcript results in that assumption. We believe that the district court was addressing both of the defendants at the same time. The court specifically referred to both Gibler and Maddox in the explanation of the mandatory sentences immediately preceding the quoted language. The court did not abuse its discretion in sentencing Gibler.

## V. Conclusion

To the extent that Gibler, by his counsel or his pro se brief, raised other issues, we have considered them and determined they are without merit. In summary, we have not found trial counsel failed in any duty in his representation of Gibler and, if in fact any deficiency existed in his representation, Gibler has shown no prejudice. Additionally, the district court did not abuse its discretion in sentencing Gibler.

**AFFIRMED.**